**In re D.C. SULLIVAN & CO., INC., Bankrupt.**

**Bankruptcy No. 70–614–G.**

United States Bankruptcy Court, D. Massachusetts.

Dec. 30, 1986.

See also, Bkrtcy., 69 B.R. 206.

Mark Berman, Widett, Slater & Goldman, Boston, Mass., for Robert Robinson, Trustee.

## OPINION AND ORDER ON COMPENSATION OF TRUSTEE'S COUNSEL

JAMES F. QUEENAN, Jr., Bankruptcy Judge.

The law firm of Widett, Slater & Goldman, P.C. (the "Firm") has applied for allowance of compensation and reimbursement of expenses in connection with its services as counsel to Robert Robinson, the trustee in bankruptcy (the "Trustee") of D.C. Sullivan & Co., Inc. (the "Bankrupt"), as well as its services as counsel to a predecessor of the Trustee. Counsel representing the Bankrupt's stockholders appeared at the hearing in opposition to the application. It is, in any event, the Court's duty to authorize compensation to professionals only to the extent consistent with governing principles of law. *See* 3A COLLIER ON BANKRUPTCY ¶ 62.05 (14th ed. 1975)

## I. THE APPLICATION IN GENERAL

This is a very old bankruptcy case, having been commenced by an involuntary petition filed on May 22, 1970. An associate or partner of the Firm has served as the receiver or the trustee in bankruptcy of the Bankrupt from the inception of the case. The Trustee was a member of the Firm for many years until his recent retirement. The Bankrupt had been in the business of supplying security guards, primarily to businesses. This is essentially a single asset bankruptcy. All but a few thousand dollars of the estate consisted of a $930,000 settlement of a fraudulent transfer action (the "*Watts* litigation") which was brought on behalf of the Trustee by other counsel and resulted in a judgment of $750,000 plus interest. The judgment on the verdict was affirmed on appeal. *See Robinson v. Watts Detective Agency, Inc.,* 685 F.2d 729 (1st Cir.1982). The *Watts* litigation involved an unusual type of fraudulent transfer: the transfer to a competitor of only the goodwill of the Bankrupt, consisting essentially of its customers and employees. The transfer took place shortly before the involuntary bankruptcy filing.

The Firm was involved in the *Watts* litigation in only a minor way. The case was prepared and tried by special co-counsel employed for that specific purpose. The services performed by the Firm have related primarily to the resolution of various claims of creditors (with one $50,000 claim being litigated at the trial and appellate level), litigation in this Court concerning the validity of a foreclosure upon the Bankrupt's real estate (the decision on this matter having been taken under advisement

and left unresolved by a predecessor judge), a rather unseemly controversy between special co-counsel concerning the sharing of fees previously awarded by this Court in the *Watts* litigation, and miscellaneous tax and other questions of the type that normally arise in the handling of a large sum of money. The Firm's application includes services that go back to 1970. It has not received any interim compensation. It seeks compensation for 1473.8 hours of work done by 14 lawyers, 3 law clerks and 8 paralegals. The total amount requested is $164,604.05 for services and $1,910.49 for expenses.

The application is supported by a narrative description of the work done, as required by Rule 32 of the Local Rules of the Bankruptcy Court of the District of Massachusetts, (the "Local Rules"). It is accompanied by contemporaneous and detailed records of the services performed by each individual on a daily basis, and sets forth the hourly rate charged for each at the time the service was performed and at the present time. The application does not, however, allocate time to separate tasks. A typical day's entry might, for example, include work in the resolution of several claims and services concerning the fee controversy among special co-counsel. Thus, the application does not comply with Local Rule 32(A), which reads in part as follows: "The 'detailed statement' supporting such an application required by R 2016(a) of the Bankruptcy Rules shall, at a minimum, contain the date each task was performed, the name of the individual performing such task *and the time expended for each task*" (emphasis added). Local Rule 32(A) has been strictly enforced. *See In re WHET, Inc.*, 58 B.R. 278 (Bankr.Mass.1986); *In re WHET, Inc.*, 62 B.R. 770 (Bankr. Mass.1986).

In *Boston and Maine Corp. v. Moore*, 776 F.2d 2 (1st Cir.1985), a case involving compensation of special labor counsel in a reorganization under § 77 of the Bankruptcy Act of 1898 as amended (11 U.S.C. § 205) (repealed 1978), the district court had disallowed 98.75 hours of time on the ground that the petitioner's contemporary time records did not adequately disclose the nature of the work performed. The district court required more information in order to differentiate hourly rates, depending on the work performed, because in its opinion not all work was worth the same. The court of appeals reversed the district court on this and other matters. The court of appeals spoke of the danger that the approach of the district court can lead to overly refined distinctions, observing that there "is a point beyond which it is neither possible nor profitable to assess the quality of counsel's time." *Id.* at 9. It cited with approval *In re Casco Bay Lines, Inc.*, 25 B.R. 747, 756 n. 22 (Bankr.1st Cir.1982), which observed that "the grading in of a 'quality' factor in determining an hourly rate on a task by task basis can ... degenerate into a highly subjective process."

■ In light of the *Moore* decision, the question arises as to the validity of that portion of Local Rule 32(A) which requires a daily allocation of the time expended for each task. We need not, however, resolve this issue. Most of the services covered by the present application took place long before the Local Rules became effective on February 1, 1986. These services also largely predate the advance of computer technology, which apparently makes a daily task-by-task allocation mechanically possible if not, perhaps, practical in light of human limitations and the virtual indivisibility of certain time spent on several tasks at once. It would be most unfair to apply Rule 32(A) in these circumstances.

## II. TRUSTEE SERVICES

■ The fee application, nevertheless, has serious deficiencies. It includes substantial services which are not legal or professional in nature, but rather consist of the performance of duties imposed upon the Trustee for which he is entitled to separate compensation. Compensation may be allowed for services as an attorney only to the extent the services are professional in nature. *See* former Bankruptcy Rule 219(c)(3). For example, some of the

nonprofessional services performed here consist of work done by a young lawyer, who was a receiver and trustee early in the case, in obtaining physical possession of the Bankrupt's books and records. Later, when the settlement proceeds were received, the Firm performed substantial services in investing funds, maintaining records with respect thereto and distributing a 100% dividend to creditors, all of which is in the nature of trustee work. The Firm has not segregated these services. Many daily entries set forth one period of time for both trustee services and legal services. For the most part, this Court will delete only time that is clearly all trustee work, thus giving the Firm some minor compensation for trustee work which has been lumped in with substantial legal work.

The Firm's records for about 11 hours of time have no description whatsoever as to the related services. We are disallowing compensation for one-half of this time because we estimate that this portion of it was devoted to trustee work.

The Trustee will be paid in connection with his own fee application for services that are not compensated under the Firm's application. He has filed an application wherein he requests a fee of $12,152.34, which is the maximum commission permitted him under the applicable statute authorizing compensation of a trustee, calculated at various percentages of values in the estate. The application filed by the Trustee merely requests the maximum statutory commission, without furnishing any information concerning the services performed. The services which are not compensated under the Firm's application here should have been included with the Trustee's application. We shall treat them as having been so included. The maximum statutory fee requested by the Trustee is being approved by a separate order today. However, the procedure adopted by the Firm and the Trustee is not being approved. The Court reserves the right to disallow in the future all compensation sought by a trustee who fails to keep separate and contemporaneous records of his non-professional services.

## III. APPLICABLE STANDARDS—THE LODESTAR METHOD

Having deleted substantially all nonprofessional services from consideration in this application, we now turn to the question of what constitutes reasonable compensation for the professional legal services rendered by the Firm to the Trustee. We recognize that this case is governed by the Bankruptcy Act of 1898 as amended (11 U.S.C. § 101) (repealed 1978), under which there prevailed a philosophy of economy in the awarding of legal fees. The application of principles of economy to attorney's fees was intended to ensure that equity was done to both the attorneys involved and the creditors of the estate. *See, e.g., Massachusetts Mutual Life Ins. Co. v. Brock,* 405 F.2d 429, 433 (5th Cir.1968). That philosophy has little application here, however, because creditors in this case have already received a 100% dividend and will likely recover substantial payments of interest. Moreover, the philosophy of economy has been undercut by the present Bankruptcy Code which requires that the cost of comparable services outside of bankruptcy be considered in determining the reasonableness of compensation. *See* 11 U.S.C. § 330. We therefore approach the subject as though this case had been filed under the present Bankruptcy Code.

Unlike the services of Special Counsel hired to prosecute the *Watts* litigation, the Firm had no understanding or arrangement which fixed its compensation at a percentage of any recovery, nor would there be any basis for such an understanding or arrangement. *Cf. Boston and Maine Corp. v. Sheehan, Phinney, Bass & Green, P.A.,* 778 F.2d 890 (1st Cir.1985) (trustee agreed with counsel that a 15% contingent fee would be added to actual services performed). The Firm's compensation is, therefore, to be based upon the so-called "lodestar" method of analysis adopted by this Circuit in *Furtado v. Bishop,* 635 F.2d 915, 919–20 (1st Cir.1980). The "lodestar" amount is first determined by multiplying

the number of hours reasonably spent by each person rendering services times the individual's reasonable hourly rate. The lodestar amount so determined can then, in theory, be adjusted upwards or downwards to reflect such factors as delay in payment, quality of representation, and the result obtained if these factors have not already been taken into account in computing the lodestar. *Boston and Maine Corp. v. Moore*, 776 F.2d 2, 7 (1st Cir.1985). The lodestar method is still evolving. The Supreme Court has recently disapproved of an addition to the lodestar amount which was intended by the lower court to reflect the superior quality of representation, observing that the lodestar amount itself includes most, if not all, of the relevant factors comprising a "reasonable" attorney's fee. *See Pennsylvania v. Delaware Valley Citizens Council for Clean Air*, — U.S. —, —, 106 S.Ct. 3088, 3098–99, 92 L.Ed.2d 439 (1986).

The Court has concerns about the reasonableness of the time devoted by the Firm in two areas: the *Watts* litigation and the preparation of the very fee application which is before the Court. The Firm and three other counsel have previously requested and obtained compensation allowances from this Court in connection with the *Watts* litigation. Two special co-counsel bore the primary responsibility for this litigation, having been hired by the Trustee as special counsel for the specific purpose of prosecuting that claim. The orders of this Court approving their appointment fixed the total compensation at one-third of the amount recovered. On September 19, 1984, this Court awarded compensation to all counsel involved in the *Watts* litigation in the total amount of $305,195.75, including $30,838.00 to the Firm.

The September 19, 1984 order of the Court excluded compensation for a number of hours which the Firm had devoted to the *Watts* litigation and for which it then sought compensation. In its order, the Court described this work as "services which were part of general counsel's duty to monitor the case and which did not con-

tribute directly to the *Watts* litigation." *In re D.C. Sullivan & Co., Inc.*, 69 B.R. 737, 742 (Bankr.D.Mass.1984). I am excluding some, but not all, of these same services from those entitled to compensation under the present application. Some are excluded because they are of a trustee nature, such as furnishing factual information to special counsel. Others are excluded because they are repetitive of the services performed by special counsel, such as the three hours spent by Mr. Robinson on July 11, 1980 which are described as follows: "Examined law and memo of law submitted by Featherston in opposition to motion for new trial and other matters." Obviously, however, some communication between the Firm and special counsel was necessary, and I am allowing compensation for a good deal of such communication. I am also excluding from compensation all services devoted to the prior fee application in the *Watts* litigation. If these services were entitled to compensation, that compensation had to be sought and obtained in connection with the prior fee application.

Services devoted to the preparation of this present fee application raise issues of reasonableness which are equally serious. There is a division of opinion as to whether work done in obtaining a fee award is compensable. Some courts treat the work as not compensable because a client in a non-bankruptcy matter would probably, and logically, regard this as part of a lawyer's general overhead for which he should not pay. *See, e.g., In re American Metals Corp.*, 49 B.R. 579 (Bankr.D.Kan.1985); *In re Horn & Hardart Baking Co.*, 30 B.R. 938, 943–44 (Bankr.E.D.Pa.1983). Other courts have taken the view that time devoted to a fee application is compensable because in bankruptcy an attorney is required to submit a more detailed account of his services then is so in other areas of practice. *Braswell Motor Freight Lines, Inc. v. Crutcher, Burke & Newsom (In re Braswell Motor Freight Lines, Inc.)*, 630 F.2d 348 351 (5th Cir.1980); *In re Baldwin-United Corp.*, 45 B.R. 381 (Bankr.S.D.Ohio 1984). The policy favoring compensation

for services rendered in order to obtain a fee award from the court is particularly strong in civil rights litigation. *See, e.g., In re Nucorp Energy, Inc.,* 764 F.2d 655 (9th Cir.1985).

If in fact the requirements imposed in connection with fee applications in bankruptcy cause substantially more time and effort in the billing process than is normal, there is good cause for compensating this additional effort. Local Rule 32(A) would clearly impose a substantial additional burden that would justify compensation. But here, as discussed, there has been no allocation of time to the various tasks as required by that rule. Each day's services have been lumped together with a description that might encompass several different tasks, just as would be done outside of bankruptcy. It is true that the application includes a narrative setting forth the basic facts of the case, which would likely not be included in a bill to the normal client who would presumably be already familiar with the work done. But the narrative here does not represent any major effort. It consists of ten pages which would require, at most, five hours of work in dictation and revisions. This effort, as well as any time spent at a fee hearing, is not out of proportion to the time a lawyer normally spends with a substantial client on the matter of fees.

■ The Firm devoted some 20 hours of lawyer time and 94 hours of paralegal time to the preparation of this fee application, an extraordinary amount of time. Much of the work might have consisted of deleting from the computer printouts the services for which compensation had been previously authorized by the prior order of September 19, 1984 relating to the *Watts* litigation, although it would seem that this would already have been done in connection with the prior fee application. Any extra effort required by this dichotomy in services is something that is peculiar to court requirements, and should be compensated. Extra effort may also include time spent compiling and detailing the application, which extends back over 16 years and includes services rendered by attorneys and employees no longer with the firm. Nevertheless, the time spent here exceeds all bounds of reasonableness. However, because of the distinctions that were necessary between the *Watts* litigation services and other services, and the fact that this application is somewhat unusual given the time it covers, we believe that some compensation is reasonable. We therefore authorize compensation for 3 hours of lawyer time and 15 hours of paralegal time in connection with services in preparing this fee application.

There remains a substantial amount of time which the Firm has spent in its representation of the Trustee, after deletion of services that reflect performances of the Trustee's duties, duplicative services in the *Watts* litigation, and excessive services devoted to the preparation of this fee application. The question arises as to whether the Firm spent a unreasonable amount of time in its representation. We have in mind the single asset nature of this bankruptcy, the relatively little litigation for which the Firm was responsible, and the fact that the Firm was representing the trustee of a business which was neither operating nor being sold, two situations which can present a host of complexities. The Court must remind itself, however, of the need to view services with some realization that problems which arise in daily practice can all but disappear to one viewing the situation in hindsight and from the ivory tower of a court's perspective. As was said by the court of appeals in *Moore* in criticizing the rather picayune approach of the district court, "it is important for a court to maintain 'a sense of overall proportion' ... and not 'become immeshed in meticulous analysis of every detailed facet of the professional representation' ... It is easy to speculate in retrospect that work could have been done in less time or with fewer attorneys or with an associate rather than a partner." *Boston and Maine Corp. v. Moore,* 776 F.2d 2, 10 (1st Cir.1985). We shall refrain from such speculation here. The Firm, and those lawyers active in this

case, enjoy an excellent and well deserved reputation.

■ The Firm requests compensation at the current hourly rates now charged for all individuals active in the case, rather than the rates charged at the time the services were performed. The rates all appear reasonable for the applicable periods. The Firm's reason for requesting payment at current rates is the delay that has occurred between performance of the services and the filing of this application. The delay, however, is not as great as might appear at first blush. Well over 90% of the requested fee results from services performed in 1982 and thereafter. Nevertheless, there has been delay in payment to a degree that would not normally occur outside of the bankruptcy context, and seldom even in bankruptcy. The excess in current hourly rates over rates charged in prior years is a justifiable compensating factor for this delay. *Grendel's Den, Inc. v. Larkin,* 749 F.2d 945, 955 (1st Cir.1984). We authorize compensation at the current hourly rates requested.

## IV. FUTURE SERVICES

In its application as originally filed, the Firm sought compensation for future services necessary to close the case, which it estimated at 25 hours of lawyer time and 45 hours of paralegal time. During the period of approximately two months between the last date covered by the original application and the date of the hearing, the Firm has already devoted 86.8 hours, with more work still necessary. As requested, we have treated the application as amended to include these additional hours.

The Firm now requests that the application not be treated as a final application, and that it be permitted to file a later application covering services through to the end of the case. We decline to grant this request. We appreciate that the initial estimate of future time was low primarily because of an unexpected complaint filed in this Court by the Bankrupt's stockholders seeking relief concerning the foreclosure sale which was the subject of litigation years ago. We recognize that additional legal work is needed, primarily to give the Court guidance on whether priority creditors should also have priority in the payment of interest on their indebtedness from the surplus which is now available. We realize that one of the special co-counsel in the *Watts* litigation may appeal from an order being entered today denying him the major portion of his requested *pro rata* share of estate earnings, and that the Bankrupt's stockholders may appeal the dismissal of their complaint on jurisdictional grounds. But this proceeding has to end sometime. It has begun to feed on itself. We do not believe that any extensive further legal services, as opposed to trustee services, will be needed. We hereby relieve the Trustee from any obligation to participate in these appeals, the Court already having ruled that the Trustee has no standing to intervene in the stockholder action in any event. The Trustee is also relieved from any obligation to furnish the Court with extensive memoranda on the question of interest priority following claim priority. We are today authorizing compensation to the Firm for an additional 15 hours of lawyer time. We compensate for no further paralegal time in the belief that paralegal services will be rendered primarily in the performance of duties imposed upon the Trustee to close the case.

## V. SUMMARY

The application as originally filed sought compensation in the sum of $157,714.05. We treat it as having been amended to include an additional 86.8 hours of lawyer and paralegal time which at the applicable rates increases the compensation requested to $164,604.05. To this we have added a final estimate of an additional 15 hours of legal services which, at $140 per hour, increases the compensation requested to $166,704.05.

From this $166,704.05 we deduct compensation requested for services which we regard as noncompensable for any one or more of the following reasons: the services are in the performance of the duties im-

posed upon the Trustee for which he is separately compensated; the services represent a duplicative effort in connection with the *Watts* litigation; or the services represent excessive services in the preparation of this fee application. The reduction caused by these noncompensable services is computed as follows:

| Name of Lawyer or Paralegal | 1986 Hourly Rate | Hours Disallowed | Compensation Denied | Reason for Denial |
|---|---|---|---|---|
| Widett | $210 | 13.4 | $ 2,814.00 | Tr., W. |
| Glosband | $205 | 22.9 | $ 4,694.50 | Tr. |
| Robinson | $200 | 42.0 | $ 8,400.00 | Tr., W. |
| Berman | $140 | 21.3 | $ 2,982.00 | Tr., Appl. |
| Moss | $160 | 4.1 | $ 656.00 | Tr., Appl. |
| Courtney | $ 90 | 4.7 | $ 423.00 | Tr., Appl. |
| DeNevi | $ 90 | 7.1 | $ 639.00 | Tr., Appl. |
| Pappone | $175 | .3 | $ 52.50 | Tr. |
| Gamer | $100 | .6 | $ 60.00 | Tr. |
| Caracci | $ 55 | 280.5 | $15,427.50 | Tr., App., W. |
| Tylec | $ 55 | .5 | $ 27.50 | Tr. |
| Horowitz | $ 55 | 1.6 | $ 88.00 | Tr. |
| DeAngelis | $ 50 | 2.0 | $ 100.00 | Tr. |
| Speight | $ 50 | 1.4 | $ 70.00 | Tr. |
| TOTALS | | 398.4 | $36,434.00 | |

Tr. = Trustee services
W. = Excessive services in *Watts* litigation and applications
Appl. = Excessive services in preparation of this fee application

---

This leaves a net compensation which is hereby allowed in the sum of $130,270.05 plus $1,910.49 for reimbursement of disbursements already made. We further authorize, without need of further order of this Court, reimbursement of all reasonable disbursements made and to be made by the Firm after the date of the last reimbursement covered by this order, which is apparently August 29, 1986.

SO ORDERED.