## In re FRUITS INTERNATIONAL, INC., Debtors.

### Bankruptcy No. B–87–01537 (ESL).

United States Bankruptcy Court, D. Puerto Rico.

March 2, 1988.

Benjamin Rodriguez–Ramon, Rodriguez–Ramon, Pena & Diaz, Hato Rey, P.R., for debtors.

Arturo González Martín, Hato Rey, P.R., for Corporacion de Credito Agricola.

Edgar Rodríguez–Méndez, Atty. Advisor, U.S. Trustee's Office, Hato Rey, P.R., U.S. trustee.

### OPINION AND ORDER

ENRIQUE S. LAMOUTTE, Chief Judge.

On November 20, 1987 the law firm of Rodríguez–Ramón, Peña and Diaz filed an application for interim allowance of attorneys' fees and expenses for services performed as attorneys for the debtor herein during the period from July 16, 1987 to November 16, 1987. The motion came before the court on January 22, 1988 for a hearing. The application was opposed by creditor Corporación de Crédito Agrícola (hereinafter CCA) and the United States

Trustee. The matter was taken under advisement and the parties were granted fifteen (15) days to file memoranda in support of their respective positions. The memoranda having been filed the court now proceeds to decide the matter.

The court is fully conscious of its responsibility to monitor applications for fees, *In re Martin*, 817 F.2d 175, 180 (1st Cir.1987), and is mindful of the crucial impact that the subject of attorney's fees has on the level of advocacy coveted and expected of attorneys appearing before the court.[1]

This view can be summarized as follows:

"Attorneys' fees play a critically important role in bankruptcy cases. They are the "lubricant" which makes the bankruptcy system. The significance of awarding adequate attorneys' fees, however, was not fully appreciated during the years prior to enactment of the Bankruptcy Code in 1978. Under the legal standard governing the allowance of attorneys' fees as authorized by the prior Bankruptcy Act and the related Bankruptcy Rules, the principal criterion was a standard of economy. The principle of economy was equated by some courts under the former Act with parsimony. With the advent of the 1978 Bankruptcy Code, a new standard was introduced. The current standard calls for the allowance of reasonable compensation for actual, necessary services rendered based on the time, nature, extent and value of the services and, importantly, "the cost of comparable services other than in a case under this title. ..." The statute was designed to elevate compensation in a bankruptcy case to the level of fees in other types of cases, generally." (Footnotes omitted).

Norton Bankr. L. & Prac. § 13.22, page 32.

As in *Matter of Pérez Hernández*, 73 B.R. 329 (Bkrtcy. D.P.R.1987), the court is faced with a need for guidelines to direct practitioners on the subject of applications, as the court's interpretation of the applica-

ble statutory provisions may vary from "the context of the previous practice of this court." *In re WHET, Inc.*, 58 B.R. 278, 282 (Bkrtcy.D.Mass.1986).

The application filed by the law firm of Rodríguez–Ramon, Pena and Diaz is formatted in the following manner: date, service performed, number of hours per day and daily total amount. The application is further subdivided to account for the charges being made by the partner and the associates. A separate exhibit has itemized the request for reimbursement of expenses.

Because the evidence submitted to support the request for reimbursement of expenses comports with this court's decision in *Matter of Pérez Hernández*, supra, the court hereby approves the same and will only concern itself with the interim application for attorney's fees.

Both the CCA and the U.S. Trustee have objected to the application primarily on the grounds that the description of the work performed is not sufficient or specific enough to allow the court and parties in interest to determine that the services were necessary, reasonable and in the estate's best interest. An examination of the application for interim compensation shows that there are four types of items which are being objected to: (1) telephone conferences, (2) meetings, (3) conferences between attorneys in the same law firm, (4) services performed on behalf of the debtor in a state court action involving CCA, and (5) legal research. Illustrative examples of these requests are as follows:

1. Telephone Conferences
7/20/87   Telephone conference with Mr. Pikes and attorney Herrero; telephone conference with Mr. Segal. (.50 hours)   $312.50

2. Meetings
7/23/87   Meeting with Mr. Segal (.75 hours)   $ 93.75

3. Conferences between attorney
8/4/87   Meeting with Associate Counsel (.25 hours)   $ 31.25

of *Pérez Hernández*, 73 B.R. 329 (Bkrtcy.D.P.R. 1987).

---

1. A similar setting concerning reimbursement of expenses to trustees and the court's difficult role came before this court in the case of *Matter*

4. State Court Action

| | | |
|---|---|---|
| 9/30/87 | Appearance before Superior Court in regard to Motion for Reconsideration and Request for Sanctions Against CCA; explanatory letters to Mr. Segal– Re: Superior Court Hearing (2.25 hours) | $281.25 |

5. Research

| | | |
|---|---|---|
| 9/2/87 | Research in regard to criteria under the Code and Commentators (1.00 hour) | $125.00 |
| 8/27/87 | Study of Sec. 363, 1108 and 365 (1.00 hour) | $ 85.00 |

Movant has responded by stating that the law firm is competent in bankruptcy litigation, that the fees are reasonable, that the explanation of the services performed is complete taking in consideration the information in the case file and the prior practice by the court during the past years, and that the services before the state court are necessary to the rehabilitation of the debtor.

### Applicable Law

#### General

■ Pursuant to 11 USC §§ 327(a)[2] and 1107(a)[3] a debtor in possession may employ an attorney to represent it in carrying out its duties under the Bankruptcy Code. The attorneys must obtain court authorization before performing services for the debtor in possession.[4]

■ The procedural requirements on interim compensation of attorneys are found in sections 330 and 331 of the Bankruptcy Code and Bankruptcy Rule 2016(a). Section 330(a) states:

"(a) After notice to any parties in interest and to the United States Trustee and a hearing ... the court may award ... to the debtor's attorney—

(1) reasonable compensation for actual, necessary services rendered by such ... attorney ... based on the nature, the extent, and the value of such services, the time spent on such services, and the cost of comparable services other than in a case under this title; and

(2) reimbursement for actual, necessary expenses."

Section 331 allows for application for interim compensation not more than once every 120 days after an order for relief or more often if the court permits. Rule 2016(a) sets forth that an application for compensation must include a "detailed statement of (1) the services rendered, time expended and expenses incurred, and (2) amounts requested." In summary, an attorney requesting compensation must file a detailed statement setting forth the request and the courts will award reasonable compensation for the services rendered after notice and a hearing. The statutory guidelines are simple and expressed in general terms.

#### The Application

The court must determine what is reasonable compensation based on the nature,

2. Section 327(a) states:
§ 327. Employment of professional persons
"(a) ..., the trustee, with the court's approval, may employ one or more attorneys, ..., that do not hold or represent an interest adverse to the estate, and that are disinterested persons, to represent or assist the trustee in carrying out the trustee's duties under this title."

3. Section 1107(a) states:
"(a) ... a debtor in possession ... shall perform all the functions and duties, except the duties specified in sections 1106(a)(2)(3), and (4) of this title, of a trustee serving in a case under this chapter."

4. Rule 2014(a), Employment of Professional Persons states:
"(a) Application for and Order of Employment. An order approving the employment of attorneys, accountants, appraisers, auctioneers, agents, or other professionals pursuant to § 327 or § 1103 of the Code shall be made only on application of the trustee or committee, stating the specific facts showing the necessity for the employment, the name of the person to be employed, the reasons for the selection, the professional services to be rendered, any proposed arrangement for compensation, and, to the best of the applicant's knowledge, all of the person's connections with the debtor, creditors, or any other party in interest, their respective attorneys and accountants. The application shall be accompanied by a verified statement of the person to be employed setting forth the person's connections with the debtor, creditors, or any other party in interest, their respective attorneys and accountants."

the extent, the value, the time spent and the cost of comparable services. Since the court's determination is based on the detailed statement submitted by the applicant, the statement or application must be self-contained or "must be sufficiently detailed and accurate to place the court in a position to make an independent decision on the application." *Matter of Pérez Hernández*, 73 B.R. at 331; *In re S.T.N. Enterprises, Inc.*, 70 B.R. 823, 834–835 (Bkrtcy.D.Vt.1987). The court should not be forced to peruse the file to make a decision.

What is sufficient detail to place the court in a position to make an independent decision depends on each case. There is a marked difference between debtors like Texaco, Inc., A.H. Robins Co., Inc. and Johns–Manville Corp., and small corporations or personal business enterprises that fail to meet the amount requirements under 11 U.S.C. § 109(e) to file under chapter 13. This court's experience is predominantly with the latter. As Judge Lavien stated in *In re WHET, Inc.*, 58 B.R. at 281–282:

"The ultimate resolution of this problem, that is, how to handle and keep records so that they will provide the Court with the specific detail it needs and, at the same time, not add to the already extensive overhead by requiring a whole new accounting and technical writting staff, will have to be made with some reasonable accommodation between Court and counsel. But, at the very least, every fee application must have a specific analysis of each task for which compensation is sought. In fact, instead of arranging the computer sheets by days, time records might better be kept by function or task and, with computers, that should not present such a great problem. For example, a recovery of a preference would be an appropriate subheading under which would be listed who did what and when and for how long,

what was sought, what was recovered, with any explanatory remarks or, if nothing was recovered, why the estate nonetheless should bear the expense. Then, without nit picking or major effort or guesstimates, in trying to piece together the facts, the Court and anyone else interested could make a rational evaluation of the reasonableness of the services rendered and their necessity."

A basic formal characteristic of a self contained application is that the same be by tasks and not by dates. See *In re S.T.N. Enterprises, Inc.*, 70 B.R. at 832, adopting Judge Lavien's rationale:

"At the very least, every application for attorneys' fees must include a specific analysis of each task that compensation is sought for. When different services are lumped together, we cannot determine whether the time allotted for each is reasonable. See *In re WHET, Inc.*, 58 B.R. 278, 281–82 (Bkrtcy.D.Mass. 1986); *In re Bible Deliverance Evangelistic Church*, 39 B.R. 768, 777 (Bkrtcy.E. D.Pa.1984); *In re Nation/Ruskin, Inc.*, 22 B.R. 207, 210 (Bkrtcy.E.D.Pa.1982)."

█ We decide to follow such view. Therefore, all applications for attorneys' fees filed hereinafter before this court shall identify each task billed to the estate, indicate the date or dates when the services were performed, the amount of time spent, the person performing the service and his hourly rate, and a brief description of what was done. *In re WHET, Inc.*, 58 B.R. at 281–282; *In re S.T.N. Enterprises, Inc.*, 70 B.R. at 832.

The court's thorough analysis of attorneys' fee applications in *In re S.T.N. Enterprises, Inc.*, supra, is an excellent guideline for practitioners to follow. But as stated before, the court will judge each case on its merits as a sense of proportion must always be kept.[5] In other words,

---

5. This balancing directive was expressed by the First Circuit Court of Appeals as follows:

"Given these circumstances, it is important for a court to maintain 'a sense of overall proportion,' *Gabriele v. Southworth*, 712 F.2d 1505, 1507 (1st Cir.1983), and not 'become enmeshed in meticulous analysis of every de-

tailed facet of the professional representation,' *Lindy Brothers Builders, Inc. v. American Radiator & Standard Sanitary Corp.*, 540 F.2d 102, 116 (3d Cir.1976) ("Lindy II"). It is easy to speculate in retrospect that the work could have been done in less time or with fewer attorneys or with an associate rather

detail must be tempered by the circumstances and reality.

### The loadstar fee

We have already established that the application must be sufficiently detailed by tasks to enable the court to make a decision. Yet, the basic ingredient or factor in giving a dollar amount to the compensation requested in this application is the fee charged by the professional person.

The Court of Appeals for the First Circuit has adopted the "loadstar" analysis to review attorneys' fees in bankruptcy cases. *In re Elmendorf Board Corporation*, 57 B.R. 580, 584 (Bkrtcy.D.N.H.1986); *In re López Rodríguez*, 76 B.R. 252, 253 (Bkrtcy. D.P.R.1987); cf. *Boston and Maine Corp. v. Moore*, 776 F.2d 2, 6 (1st Cir.1985) and *Boston and Maine Corp. v. Sheehan, Phinney, Bass & Green*, 778 F.2d 890, 894 (1st Cir.1985). The loadstar method considers a number of factors in reaching a reasonable hourly rate. This court summarized them in *In re López Rodríguez*, 76 B.R. at 253, as follows:

"Under the loadstar analysis the number of hours worked is multiplied by a reasonable hourly rate. The loadstar fee may be adjusted up or down taking into account several factors. The more commonly known twelve factors are (1) the time and labor expended; (2) the novelty and difficulty of the questions raised; (3) the skill required to properly perform the legal services rendered; (4) the attorney's opportunity costs in pressing the instant litigation; (5) the customary fee for like work; (6) the attorney's expectations at the outset of the litigation; (7) the time limitations imposed by the client or circumstances; (8) the amount in controversy and the results obtained; (9) the experience, reputation and ability of the attorney; (10) the undesirability of the case within the legal community in which the suit arose; (11) the nature and length of the professional relationship between attorney and client; and (12) attorney's fees awards in similar cases."

*In re First Colonial Corp. of America*, 544 F.2d 1291 (5th Cir.1977). *Harman v. Levin*, 772 F.2d 1150, 1152 fn. 1 (4th Cir.1985).

The above constitute the general guidelines upon which this court will review fee applications. As a minimum, a detailed application by tasks must be submitted. The court will then determine the reasonableness of the services performed and the fee using the loadstar method.

### Discussion

The services performed, and identified in the application for compensation as telephone conferences, meetings and conferences between attorneys, suffer a common defect in failing to describe with sufficient particularity the activity performed. Such particularity is needed for the court to make a meaningful evaluation. An application requesting compensation for items such as meetings, conferences, correspondence, and telephone calls [6] should identify participants, describe the subject matter of the communication and justify its necessity. *In re S.T.N. Enterprises, Inc.*, 70 B.R. at 833. Also, the application must divide the services by tasks. Lumping or grouping different services makes it virtually impos-

---

than a partner. On the other hand, it is also possible that B & M would not have enjoyed the success it did had its counsel managed matters differently. Fee-cutting 'ideally should be tempered with a view towards the need for the services at the time they were rendered.' *In re Casco [Bay Lines, Inc.]*, 25 B.R. [747] at 756 [ (Bankr. 1st Cir.1982) ]." *In re Boston and Maine Corp. v. Moore*, 776 F.2d 2, 10 (1st Cir.1985).

**6.** How much detail is provided depends on the amount of time spent and the circumstances. The issue was addressed in *In re WHET, Inc.*, 58 B.R. at 282 as follows:

"Counsel has pointed to such routine items as the numerous telephone calls in a case, as presenting a unique difficulty in itemizing each and every call separately, but that need not be so. The telephone calls dealing with the preference action would be so listed with a word or two as to their subject-more, if it was an extended call. General calls are the exact problem and would be clearly identified so that whether they were, for example, trustee's business or counsel work, could more readily be determined."

sible for the court to determine whether the time spent on each is reasonable or not. Thus, the application must subdivide the tasks by subject matter and describe the work performed.

 The services performed by debtor's counsel must inure to the benefit of the estate in order to be compensable. *In re S.T.N. Enterprises, Inc.*, 70 B.R. at 839. In that respect the work performed before the state court action may be compensable. But the necessity and benefit to the estate must be disclosed in the application. Also, each task must be described with sufficient particularity to justify its necessity. This particularity is lacking in the application for attorneys' fees for the services performed in the state court action wherein the debtor is a party.

The application includes legal research as an item subject to compensation. Legal research is a compensable item. However, debtor's counsel must specify the topic or subject being researched and its relation to the particular case. General research on the law, known to bankruptcy practitioners should not be charged to the estate. *In re S.T.N. Enterprises, Inc.*, 70 B.R. at 836, 838. Since the time spent on legal research does not state its relation to the task being performed, the court cannot ascertain its necessity or the reasonableness of the time spent.

The loadstar fees being charged, that is, $125.00 per hour for the senior partners, $85.00 per hour for associates and $40.00 per hour for paralegals are reasonable based on the cost of comparable services, taking in consideration the expertise and quality of representation of the law firm of Rodríguez Ramón, Peña and Diaz.

The court, although aware that the prior practice in this district did not require the particularity or format being demanded in this opinion and order, finds that the application fails to meet the standards set forth by Section 330(a) and Rule 2016(a), and, therefore, directs the debtor's attorney to submit a supplemental application to meet the criteria set forth herein. *In re WHET, Inc.*, 58 B.R. at 282.

*Conclusion*

In view of the foregoing, the court finds that the application fails to describe with sufficient particularity the services performed; and, consequently, the court is unable to pass on its reasonableness. Debtor's attorneys shall file a supplemental or amended application. The request for reimbursement of expenses in the amount of $1,744.52 is hereby approved.

SO ORDERED.