In re C.P. DEL CARIBE, INC., Debtor.

In re EER REALTY, S.E., Debtor.

In re EMERITO ESTRADA RIVERA PARTS AND SERVICE, INC., Debtor.

In re EER AGRICULTURAL EQUIPMENT, INC., Debtor.

In re BORICUA MOTORS CORPORATION, Debtor.

In re EMERITO ESTRADA RIVERA, INC., Debtor.

In re ISUZU DEL CARIBE, INC., Debtor.

In re JEEP/EAGLE DE PUERTO RICO, INC., Debtor.

In re EMERITO ESTRADA RIVERA-ISUZU DE P.R., INC., Debtor.

In re CARIBE MOTORS PROPERTY CORP., Debtor.

In re E.E.R. REALTY CORP., Debtor.

In re DAIHATSU DE PUERTO RICO, INC., Debtor.

In re EER ENTERPRISES, INC., Debtor.

In re BORICUA MOTORS LEASING CORPORATION, Debtor.

Bankruptcy Nos. B–91–00497 (ESL) through B–91–00510 (ESL).

United States Bankruptcy Court, D. Puerto Rico.

July 10, 1992.

Sergio Ramirez de Arellano, Hato Rey, P.R., for examiner.

Alejandro Oliveras, Asst. U.S. Trustee, Hato Rey, P.R., for U.S. Trustee.

## OPINION AND ORDER

ENRIQUE S. LAMOUTTE, Chief Judge.

This case is before the court upon the application for compensation by Deloitte and Touche (Deloitte), accountants for the examiner, for clerical work, training a co-worker on D–Base IV, preparation of the fee application and for reimbursement for meal expenses. Both the U.S. Trustee and the examiner have filed objections to the fees charged for these tasks and to the reimbursement for meals. The amounts in controversy total $12,228.50, that is, $5,062.50 for secretarial work, $4,400.00 for preparation of the fee application, $1,746.00 for meals and $1,020.00 for Training on D–Base IV.

*Procedural History*

After notice and a hearing on February 6, 1991 the court entered a Consent Order Appointing Examiner through which the examiner was authorized to employ professionals, with prior court approval, to the extent the examiner has such rights under 11 U.S.C.A. § 1104, § 1106, § 105, including one of the so called "Big Eight" accounting firms in Puerto Rico as certified public accountants (dkt. # 18 in 91–00497). Pursuant to this court order, the examiner after application and court approval, employed the accounting firm of Deloitte and Touche. (*See*, dkt. # 31 and # 27 in 91–00497). The authorizing order specifies that compensation will be allowed by the court upon application. Since this order was entered three applications for compensation by examiner's accountants were filed with the court.

On April 8, 1992 Deloitte filed a Motion Requesting Fees and Expenses which sought the disbursement of outstanding fees, due and owing, that were uncontested, and the disbursement of other fees still pending but contested, as soon as the court issued its ruling on the matter (dkt. # 150 in 91–00497). The contested amount embodied compensation for secretarial work, paraprofessional work, training on D–Base IV, mileage, preparation of the fee application and meals. The examiner filed a reply to this motion wherein he objected to the reimbursement of meal expenses and compensation for the preparation of the fee application, clerical work and training on D–Base IV (dkt. 153 in 91–00497). Both motions were scheduled for a hearing on May 15, 1992.

On May 15, 1992 the court approved and ordered disbursement of the uncontested amount, that is $64,171.66 (dkt. # 164 in 91–00497). In addition the court reduced the reimbursement for mileage by the sum of $10.52 [1], allowed compensation to para-

1. The Minutes of the hearing held on May 15, 1992 incorrectly order the reimbursement for mileage in the amount of $10.52. The court clearly stated during the hearing that reimbursement for mileage was allowed at the federal rate, that is .25 per mile therefore, the amount allowed for mileage would be reduced by $10.52, as expressed in the Notes and Remarks of the Minutes. Thus, the court hereby amends the order as contained in the Minutes of the hearing held on May 15, 1992 to reduce the

professionals in the amount of $10,050.00 and took under advisement the compensability of secretarial work, preparation of the application for compensation, meals and training a co-worker on D–Base IV.

During the hearing no evidence was presented with regards to the application for compensation for the time spent training a co-worker. Deloitte presented testimonial evidence to the effect that a fee application in a bankruptcy case takes a significant amount of time due to the requirement of specificity set forth by the Bankruptcy Code and enforced by this court,[2] as opposed to cases outside of bankruptcy in which the account of the services performed included in the billing statement is terse and requires a minimal amount of time for preparation; approximately fifteen (15) minutes to draft and ten (10) minutes to type.

Prior to the hearing held on May 15, on three occasions the court withheld disbursement of fees to Deloitte upon the U.S. Trustee's objections.[3] On December 23, 1991 Deloitte filed a Memorandum of Law in Support of Deloitte and Touche's Fee Application as ordered by the court on November 22, 1991, supporting its fee applications for the time billed for secretarial work, paraprofessional work, supervisory work, preparation of the fee application, and meals (dkt. # 137 in 91–00497). Deloitte argues that it is a common practice among accounting firms to bill their clients for clerical work.

Deloitte attached to its motion sworn statements from eleven (11) accounting firms on the island describing their billing practices. Most of these firms state that they bill their clients for the work performed by the clerical or support staff separately, that is, it is not included in the overhead expenses. The hourly rate these firms charge for clerical work ranges from $10.00 to $35.00. However, most statements provided by these firms state that clerical work is billed only for actual time spent for the benefit of the client. The firm of Landa, Umpierre & Co., for example, distinguishes two types of work performed by the clerical staff; administrative and professional support. Administrative work consists of office work such as filing, preparing payroll, purchases, bank deposits, record keeping, etc., which is not directly billed to the client but is included in the overhead expenses. Tasks such as typing reports, reproduction, binding, etc. can be allocated to one client and are billed to that

amount allowed in reimbursement for mileage by $10.52.

**2.** Ms. Enid Reichard, manager of the applicant accounting firm Deloitte and Touche testified that the preparation of an application for compensation for the approval of the bankruptcy court takes at least eight (8) hours. (Deloitte prepared thirteen (13) applications which were incorporated to the three applications for compensation, filed with the court, of examiner, examiner's attorney, examiner's certified public accountants and examiner's accountants.) Ms. Reichard testified that three persons were directly involved in the preparation of the applications in this case, two, including her, in a supervisory capacity.

**3.** The first application for interim compensation for the examiner's accountants was filed on May 3, 1991 (dkt. # 64 in 91–00497). The U.S. Trustee filed an objection to the time billed for clerical work, preparation of the fee application, meals, mileage and training a co-worker to use D–Base IV, among other things, on May 22, 1991 (dkt. # 67 in 91–00497). The court approved the application in the amount of $100,-000.00, withheld the approval of the objected portion of the fees and allowed the applicant and the U.S. Trustee to submit briefs stating their positions (dkt. # 78 in 91–00497).

The second application for interim compensation of examiner's accountants was filed on July 23, 1991 (dkt. # 94 in 91–00497). Again, the U.S. Trustee filed an objection to the time billed for clerical work, meals, mileage and preparing the fee application, among other things, on August 15, 1991 (dkt. # 102 in 91–00497). The U.S. Trustee requested these fees to be held in abeyance until they briefed their position. The court approved the application in part and deferred a ruling on the rest until applicant or the U.S. Trustee moved the court to do so (dkt. # 104 in 91–00497).

The third application for compensation was filed on November 1, 1991 (dkt. # 120 in 91–00497). On November 21, 1991 the U.S. Trustee filed an objection to such application based on the same grounds as the ones to the prior applications. During the hearing held on November 22, 1991 upon Deloitte's request the court granted Deloitte thirty days to reply to the U.S. Trustee's comments and granted the U.S. Trustee ten days to reply thereafter.

client at the standard hourly rate or as agreed.

In Deloitte's applications the clerical work charged to the estate is not described, the hours spent are lumped together and multiplied by the hourly rate ($15.00), next to the person who performed the work. The clerical work is billed as follows:

| Typists and Clerks | Hours | Rate per hour | Total |
|---|---|---|---|
| Milagros Arroyo | 63.00 | 15.00 | 945.00 |
| Amarilys Rivera | 90.5 | 15.00 | 1,357.50 |
| Irma Ortiz | 3.0 | 15.00 | 45.00[4] |

With respect to meals Deloitte argues that it is their policy and the policy of most accounting firms, to pay for the meal expenses incurred by the professionals or the paraprofessionals who have worked in excess of eleven (11) hours on a regular working day, or four (4) hours on a weekend or a holiday. These meal expenses are in turn billed to the client for whom the work was performed. All except one of the sworn statements provided by the accounting firms describing their billing practices and attached to this motion in support of Deloitte's fee application do not specifically include as billable expenses the meal allowances to the professionals or paraprofessionals who have worked overtime.

The applications for compensation provided by Deloitte divide the work by tasks performed by each accountant and the hours spent on each task. The applications contain a description of the tasks performed over an average of an eight (8) hour time span on each entry. The time sheets corresponding to the partners and managers describe tasks performed in shorter periods of time, that is three (3) or four (4) hours, however, the amount of time these professionals have spent in this case is also comparatively less.

Each application includes a summary of the hours spent by each accountant and clerical staff and the hourly rate billed for each one. Partners charge $150.00, Managers $105.00, Seniors $60.00, Senior Assistants $50.00, Juniors $40.00 and Typist and Clerks, as mentioned above, $15.00. Upon considering the total amount of the hours worked by all the professionals in this case the average hourly rate charged is around $50.00. The summary also includes the expenses incurred by the accountants in relation to the work performed on behalf of this account, such as meals, tolls and mileage.

### Discussion

Sections 330 and 331 of the Bankruptcy Code, and Bankruptcy Rule 2016(a) provide the procedural guidelines for obtaining interim or final compensation for the services rendered by a professional whose employment has been previously approved by the court. Section 330(a) states that the court may award

(1) reasonable compensation for actual, necessary services rendered by such trustee, examiner, professional person, or attorney, as the case may be, and by any paraprofessional persons employed by such trustee, professional person or attorney, as the case may be, based on the nature, the extent and the value of such services, and the cost of comparable services other than in a case under this title; and

(2) reimbursement for actual, necessary expenses.

11 U.S.C.A. § 330(a). A detailed application for compensation must be filed to those effects. Rule 2016(a) provides that:

---

4. Third Application for Interim Compensation of Examiner, Examiner's Attorney, Examiner's Certified Public Accountants; Examiner's Accountants; and Notice of Hearing (Eleventh Application of Accountants for the Examiner for Allowance of Interim Compensation, Ex. A), filed on November 4, 1991 (dkt. # 120 in 91–00497).

An entity seeking interim or final compensation for services, or reimbursement of necessary expenses, from the estate shall file with the court an application setting forth a *detailed statement* of: 1) the services rendered, time expended and expenses incurred, and 2) the amounts requested. (emphasis ours)

Fed.R.Bankr.P. 2016. The applications for compensation of professional fees have to be "self-contained" or specific enough that the court, based on the application alone, can determine if the services are compensable. *In re Fruits International Inc.*, 87 B.R. 769 (Bankr.D.Puerto Rico 1988). It should contain all the elements needed to make such determination of compensability. This court stated in *In re Fruits* that

all applications for attorney's fees filed hereinafter before this court shall identify each task billed to the estate, indicate the date or dates when the services were performed, the amount of time spent, the person performing the service and his hourly rate, and a brief description of what was done.

■ It is important to note that Section 330 governs the application for attorney's fees as well as the application for accountant's. Accordingly, the applications for accountants' fees are held to the same strict guidelines as the ones for attorney's fees. *In re Sounds Distributing Corp.*, 122 B.R. 952, 956 (Bankr.W.D.Pa.1991), ("The standard of review of an accountant's application for compensation under 11 U.S.C.A. § 330 is the same as the standard which applies to requests for attorney's fees.") *In re Lani Bird, Inc.*, 113 B.R. 672 (Bankr. D.Haw.1990); *In re Malden Mills, Inc.*, 42 B.R. 476 (Bankr.Mass.1984).

■ The court has the ultimate responsibility to monitor the request for fees to be paid from the estate and must apply the "reasonable compensation" standard upon determining the allowed compensation to professionals providing services for the benefit of the estate. *See, In re Fruits*, 87 B.R. at 770. The court must consider the nature of the tasks involved, their extent and value, the time spent and the cost of comparable services. Id. at 771–772. The concept of strict economy which governed the Bankruptcy Act of 1898 (11 U.S.C. § 1 et seq. [1976]) ceased to be a factor to consider upon determining the "reasonableness" of the fees requested by the professional for services rendered and to be paid from estate funds. *Boston & Maine Corp. v. Sheehan, Phinney, Bass & Green P.A.*, 778 F.2d 890 (1st Cir.1985); 3 Lawrence P. King et al., *Collier on Bankruptcy* ¶ 330.05 at 330–35 (15th ed. 1991).

■ The court will apply the "loadstar" method upon determining the amount of fees to be paid, method consisting of the number of hours reasonably spent times a reasonable hourly rate. The total of this computation may then be adjusted upon consideration of other factors in order to certify the "reasonableness" of the amount to be paid.[5] *Blanchard v. Bergeron*, 489 U.S. 87, 87–88, 109 S.Ct. 939, 941–942, 103 L.Ed.2d 67 (1989). The burden of establishing the reasonableness of the requested fees lies on the applicant. *In re Gillett Holdings, Inc.*, 137 B.R. 462, 466 (Bankr. D.Colo.1992); *In re S.T.N. Enterprises Inc.*, 70 B.R. 823, 832 (Bankr.D.Vt.1987).

■ Furthermore, only services rendered in benefit of the estate will be compensable from its funds. *In re Reed*, 890 F.2d 104 (8th Cir.1989); *In re Plunkett*, 60

---

5. The factors to consider upon adjusting the "loadstar" figure to ascertain the reasonableness of the fees are set forth in the Fifth Circuit decision *Johnson v. Georgia Highway Express, Inc.*, 488 F.2d 714, 718 (5th Cir.1974) and cited in 2 Lawrence P. King et al., *Collier on Bankruptcy* ¶ 330.05 at 330–35 (15th ed. 1991) which are the following:

(1) the time and labor required; (2) the novelty and difficulty of the questions; (3) the skill requisite to perform the legal service properly; (4) the preclusion of other employ-

ment by the attorney due to the acceptance of the case; (5) the customary fee; (6) whether the fee is fixed or contingent; (7) the time limitations imposed by the client or the circumstances; (8) the amount involved and the results obtained; (9) the experience, reputation and ability of the attorneys; (10) the "undesirability" of the case; (11) the nature and length of the professional relationship with the client; and (12) awards in similar cases.

488 F.2d at 717–719.

B.R. 290 (Bankr.S.D.N.Y.1986). "Any calculation of reasonable fees, based on services rendered and hours expended, must be leavened with an assessment of benefit accruing to the estate." *Gillett,* 137 B.R. at 467.

Upon this review of the procedures and requirements with regards to compensation in bankruptcy, we now proceed to discuss the issues at bar, compensability of clerical work, training a co-worker, preparation of a fee application and reimbursement of meal allowances.

A.  Clerical Work

■ As a general rule courts have viewed clerical work as part of the overhead expenses incurred by a professional, and because it is an expense which is built in the hourly rate of the professional is non-compensable. However, the evidence presented by the applicant in this case shows that it is a common practice among accounting firms in Puerto Rico to exclude clerical work from the hourly rate billed by the accountant. As shown by the sworn statements provided by the applicant, accountants bill their clients for the work performed by their clerical staff separately, that is, by the hour with a fixed hourly rate, in the same manner they bill their own work.

■ However, in its applications Deloitte has failed to provide the specificity required by the bankruptcy rules with regards to the amount of time billed by the clerical staff. The court cannot assess the reasonableness of the fees charged if no description of the tasks performed is provided. In fact, the only information supplied by the applications with regards to clerical time is the person who performed the work and the hours spent. Clerical or support personnel perform diverse duties, some of them administrative, others can be allocated to one client in particular. The court may consider to allow compensation for those tasks performed by support or clerical personnel which have been shown to be of direct benefit to the client billed for it, as it is the prevalent practice among accountants in Puerto Rico. *See, In re*

*Wolverine Knitting Mills, Inc.,* 107 B.R. 546, 547 (Bankr.E.D.Mich.1989), (Accountants were entitled to separate compensation for clerical services where accountants showed that it was their common practice with all their clients and most accountants in the area also billed their clients separately for the clerical work.) But if the court is not placed in a position to make that determination, no compensation may be allowed.

In a prior opinion this court had found that "incidental" secretarial expenses are reimbursable. *In re Perez Hernandez,* 73 B.R. 329 (Bankr.D.Puerto Rico 1987). The term incidental in this context signifies an expense which is necessary but not worth employing a professional person for. *Id.* In *Perez Hernandez* this court disallowed reimbursement of expenses due to the insufficient description and itemization of the charges which impeded the assessment of the reasonableness of the expenses charged. *Id.*

The court in *In re Stanley,* 120 B.R. 409 (Bankr.E.D.Tex.1990) pointing out that clerical work may be compensated in bankruptcy, also disallowed the requested fees due to deficient particularity provided with regards to the services rendered. The court, following *Perez Hernandez,* stated that

> This Court is of the opinion that to the extent secretarial, clerical or stenographic work is properly documented as to the individual performing it, the time involved in performing the service, and the benefit to the individual estate that said expenses will be fully compensable within the scheme of 11 U.S.C. § 330(a)(2). However, since the Chapter 7 Trustee in this case did not properly document the expense items requested for secretarial and book-keeper work, said items are disallowed.

120 B.R. at 415.

Due to the failure to provide a description of the services provided by the clerical or support staff, the court may not ascertain the reasonableness of the fees requested and hereby disallows this part of the application.

B. Training a co-worker on D–Base IV

■ Training is also part of the overhead expenses of an office providing professional services, and it would be very difficult to allocate this expense to one client in particular. In general, the training given to a particular person will benefit all the clients for whom that person will render services, not only the one billed for it. In the absence of evidence to the contrary this court hereby disallows this part of the application.

C. Preparation of the fee application

■ It has been the policy of this court to deny compensation for the time spent preparing an application for compensation because it is a cost of doing business and is never billed to a client outside of bankruptcy and that the preparation of a fee application is of no direct benefit to the estate but to the attorneys or professionals seeking compensation. However, upon revisiting the issue this court now finds that the specificity requirements set forth by the Bankruptcy Code for the applications for compensation are far more rigorous and time consuming than those clients outside of bankruptcy expect in their billing statements.

■ It has been argued that it is inequitable to require more particularity in the billing statement than what is required by other clients who are not in bankruptcy and deny compensation for the time spent providing it. For this reason this court is willing to revise its prior rulings denying compensation for the time spent preparing a fee application. Within this circuit bankruptcy courts have decided to allow compensation for the time spent preparing the application. *El Mundo Corp.*, Case No. 91–00356 (SEK), (Bankr.D. Puerto Rico, February 21, 1992); *In re Bank of New England Corp.*, 134 B.R. 450 (Bankr. D.Mass.1991); *In re D.C. Sullivan & Co.*, 69 B.R. 212 (Bankr.D.Mass.1986); *In re WHET Inc.*, 61 B.R. 709 (Bankr.D.Mass. 1986). Compensation for the time spent preparing a fee application in a bankruptcy case may be allowed only for the actual time spent in providing the additional speci-

ficity required by the Bankruptcy Code and not provided to other clients. *See, In re WHET*, 61 B.R. at 712.

Nevertheless, in this case the applications for compensation filed by Deloitte do not include the particularity mandated by the Bankruptcy Code and that may warrant compensation for the time spent preparing it. Each item contained in the application included a description of the work performed over an eight (8) hour time period. The compilation of the work performed by the different accountants in this case could not have taken an inordinate amount of time to draft if each person kept a daily record of the tasks performed. A brief description of the work performed for a period of an average of eight (8) hours, a final revision of the daily record kept by each accountant involved in the case and a summary of all the hours worked and the expenses incurred is the least amount of detail required by any client on their billing statement.

Therefore, the compensation requested for the time spent preparing the applications for compensation is hereby denied.

D. Reimbursement for meal expenses

■ This court finds that the meal expenses incurred by Deloitte are non-reimbursable. Applicant has failed to establish that it is a common practice among the accounting firms in Puerto Rico to pay their personnel for their meals when they relate to overtime work. Furthermore, most bankruptcy courts have found that this expense is part of the non-reimbursable overhead. *In re Bank of New England Corp.*, 134 B.R. at 458; *In re BiCoastal Corp.*, 122 B.R. 140 (Bankr.M.D.Fla. 1990); *In re First Software Corp.*, 79 B.R. 108 (Bankr.D.Mass.1987); *In re Gulf Consolidated Services Inc.*, 91 B.R. 414 (Bankr.S.D.Tex.1988). This court adopts the majority position taken by courts in disapproving reimbursement for meal expenses.

### Conclusion

Based on the aforestated this court hereby denies compensation for clerical work,

training on D–Base IV, preparation of the fee application and reimbursement for meal expenses.

SO ORDERED.