950 F.2d 588
 Bankr. L. Rep. P 74,357
In re David Preston HALEY, Carolyn Ann Haley, Debtors.
LAND WEST, INC., Appellant,
v.
COLDWELL BANKER COMMERCIAL GROUP, INC., California Federal
Bank, fka California Federal Savings & Loan
Association, Appellees.
 No. 90-16351.
 United States Court of Appeals,
Ninth Circuit.
 Argued and Submitted Nov. 5, 1991.
Decided Dec. 6, 1991.
 
 James D. Holden, Hanson, Bridgett, Marcus, Vlahos & Rudy, San Francisco, Cal., for appellant.
 James A. Tiemstra, Miller, Starr & Regalia, Oakland, Cal. and Randolph L. Howard, Frandzel & Share, San Francisco, Cal., for appellees.
 Appeal from the Ninth Circuit Bankruptcy Appellate Panel.
 Before FLETCHER, WIGGINS and KOZINSKI, Circuit Judges.
 FLETCHER, Circuit Judge:
 
 
 1
 Land West, Inc. ("Land West") appeals from the decision of the Bankruptcy Appellate Panel ("BAP") affirming the bankruptcy court's holding that it was not entitled to a commission as broker for the buyer in the trustee's sale of encumbered property.
 
 
 2
 We affirm the BAP's decision.
 
 BACKGROUND
 
 3
 In March, 1988 the debtors, David and Caroline Haley, filed a Chapter 11 petition. California Federal Bank ("Cal Fed"), one of the appellees, held first trust deeds on two of the debtors' real properties, the Crow Canyon Office Park and the Centerpoint Executive Building.
 
 
 4
 On January 24, 1989, pursuant to Sections 327 and 328, the Bankruptcy Court approved the Chapter 11 Trustee's employment of the Coldwell Banker Commercial Group, Inc. ("Coldwell"), also an appellee, as the real estate broker to obtain a buyer for the properties.
 
 
 5
 In January 1989 David Haley referred Larry Freels to Cal Fed and counsel for Freels began negotiations for a sale of the two properties with Cal Fed. These negotiations were independent of Coldwell's efforts at marketing the property. However, Cal Fed and Freels failed to come to an agreement for the purchase of Cal Fed's note or the properties.
 
 
 6
 Coldwell solicited buyers. Eventually, it was successful and the Trustee noticed a proposed sale to JMA Properties for a total price of $17,575,000 for the two properties, set for approval at a hearing on March 14, 1989. On that date, Freels appeared through counsel and purchased the properties by successful overbids for a purchase price of $17,985,000.
 
 
 7
 On May 15, 1989, Coldwell filed its Motion to Confirm Earned Commission re Sale of Real Property. On May 25, 1989, Land West also filed its Notice of Application and Motion and Application for Order Directing Payment of Real Estate Commission. Land West asked the Bankruptcy Court to grant it $252,931.25 in sales commissions. Land West is a corporation wholly owned by Freels. Land West asserted that it was "the real estate broker which procured two limited partnerships, which in conjunction with Riverbank as participating lender, acted through Larry Freels" as the purchasers to whom the properties were sold. In support of its application, Land West filed a declaration by Freels wherein Freels states that he, as the partnerships' general partner, was acting on behalf of the two limited partnerships (Gold Canyon Limited Partnership and Canyon Center Court, a California Limited Partnership), in procuring the properties. No other evidence of an agreement between Freels and Land West was produced. Land West had not made an appearance at the March 14, 1989 hearing.
 
 
 8
 At the hearing on the motions for commissions filed by Land West and Coldwell, Cal Fed opposed the payment of any sales commission out of its collateral, asserting that the property was overencumbered and proceeds from the sale would be insufficient to pay off Cal Fed's liens. However, the bankruptcy court held that Coldwell was entitled to a 2.75% sales commission to be paid from the proceeds of the sale. It also held that Land West was not entitled to any commission. Land West appealed the decision of the bankruptcy court to the BAP, which affirmed.STANDARD OF REVIEW
 
 
 9
 This court and the BAP review a bankruptcy court's conclusions of law de novo. Findings of fact are upheld unless they are clearly erroneous. Rubin v. West (In re Rubin), 875 F.2d 755, 758 (9th Cir.1989).
 
 DISCUSSION
 
 10
 The bankruptcy court and the BAP found that Land West was not entitled to compensation from the bankruptcy estate because its employment had not been approved by the Bankruptcy Court under section 327 of the Bankruptcy Code (11 U.S.C. § 327).
 
 
 11
 Section 327 permits the trustee, with the approval of the court, to employ attorneys, accountants and other such "professional persons," provided such professionals "do not hold or represent an interest adverse to the estate" and are "disinterested persons." 11 U.S.C. § 327(a).
 
 
 12
 Under the regime Section 327 establishes, the bankruptcy court controls the payment of any commission to Land West. Control by the bankruptcy court is necessary to enable the court to contain the estate's expenses and avoid intervention by unnecessary participants. "The purpose of the rule requiring prior court authorization of a professional's appointment is to eliminate volunteerism and thus aid the court in controlling estate administrative expenses." In re Willamette Timber Sys., 54 B.R. 485, 488 (Bankr.D.Ore.1985); see also In re Met-L-Wood Corp., 103 B.R. 972, 975 (Bankr.N.D.Ill.1989) (setting out policies underlying Section 527); 2 Lawrence P. King et al., Collier on Bankruptcy § 327.02, at 327-9 (15th ed. 1991) ("The services for which compensation is requested should have been performed pursuant to appropriate authority under the Code and in accordance with an order of the court. Otherwise, the person rendering services may be an officious intermeddler or a gratuitous volunteer."). Land West cannot emerge "out of the blue," and receive compensation without having obtained prior court approval of the Bankruptcy Court.
 
 
 13
 Thus, the bankruptcy court was correct in refusing to award a commission to Land West. The decision of the BAP is AFFIRMED.