## In re KEREN LIMITED PARTNERSHIP, Debtor.

### No. 98 CIV. 4348(BDP).

United States District Court, S.D. New York.

Oct. 1, 1998.

Andrew A. Kress, David C. Albalah, Kaye, Scholer, Fierman, Hays & Handler, LLP, New York City, for Keren Limited Partnership.

Robert M. Dombroff, Jared R. Clark, Bingham, Dana, L.L.P., New York City, for Swiss Bank Corporation.

Edward H. Tillinghast, III, Coudert Brothers, New York City, for Cushman & Wakefield of Connecticut, Inc. and Cushman & Wakefield, Inc.

## MEMORANDUM DECISION AND ORDER

PARKER, District Judge.

By order dated May 6, 1998, Bankruptcy Judge Adlai S. Hardin, Jr. denied Cushman & Wakefield, Inc. and Cushman & Wakefield of Connecticut, Inc.'s (collectively "C & W") motion (1) to be retained *nunc pro tunc* and, (2) to have its claim for real estate brokerage fees treated as a post-petition administrative expense pursuant to § 503(b) of the Bankruptcy Code. C & W appeals Judge Hardin's Order. For the reasons that follow, the Order is affirmed.

## BACKGROUND

C & W, a real estate brokerage firm, and the Debtor, Keren Limited Partnership, the owner of a commercial real estate complex in Tarrytown, New York known as the Landmark, entered into a Commission Agreement (the "Agreement") dated September 6, 1996.

The Agreement entitled C & W to a commission in the event that Keren and Witco Corporation, a prospective tenant, executed a lease for office space at the Landmark before December 31, 1997. The Agreement stated, in part:

> in the event of the consummation ... of the above Lease, [Debtor] shall pay to [C & W], in consideration for its brokerage services rendered, Ninety Percent (90%) of a commission computed and payable in accordance with the annexed Schedule.
>
> . . .
>
> [i]f the lease is not consummated on or before December 31, 1997, this Agreement shall terminate unless extended in writing by the parties. Nothing in the foregoing shall impair C & W's entitlement to a commission in the event C & W is the procuring cause of a lease after the expiration of this Agreement.

On April 9, 1997, Keren filed a petition under Chapter 11 of the Bankruptcy Code and since the filing has been operating as a debtor-in-possession. On June 5, 1997, C & W moved under 11 U.S.C. § 365(d)(2) to fix a date for Keren to assume or reject its executory contract (i.e. the Agreement) with C & W. C & W voluntarily withdrew the Motion to Assume on September 2, 1997, and on December 15, 1997, Keren and Witco executed the lease.

C & W moved in January 1998 to be retained as Keren's real estate brokers and to recover as an administrative expense under § 503(b) $1,221,589.77, its brokerage commissions for the Landmark transaction. C & W also requested that the court approve its employment *nunc pro tunc* to April 9, 1997, and in the alternative, payment of its commission as an administrative expense. Both the Debtor and Swiss Bank, a secured creditor, opposed the motion, and Swiss Bank cross-moved to dismiss for failure to state a claim.[1] On May 6, 1998, the Bankruptcy Court issued an order "dismissing and denying" C & W's motion. C & W challenges that determination on this appeal.

---

1. Judge Hardin considered Swiss Bank's Cross-Motion to Dismiss as an alternative basis for denying C & W's motion.

## DISCUSSION

Under 28 U.S.C. § 158(a) and (c), the district court is authorized to exercise appellate jurisdiction over final orders of the bankruptcy court. *See* Bank.Rule 7052 (incorporating Fed.R.Civ.P. 52). This Court reviews the bankruptcy court's findings of fact under a clearly erroneous standard, and any conclusions of law *de novo*. *In re Momentum Mfg. Corp.*, 25 F.3d 1132, 1136 (2d Cir. 1994). A bankruptcy court's ruling on a *nunc pro tunc* application for retention of a professional is reviewed for abuse of discretion. *In re Jarvis*, 53 F.3d 416, 420 (1st Cir.1995) (citing *In re Land*, 943 F.2d 1265, 1267–68 (10th Cir.1991)). As previously noted, the Bankruptcy Court dismissed and denied appellant's motion. In reviewing that determination, this Court, as did the Bankruptcy Court, assumes the truth of C & W's allegations and draws all reasonable inferences in its favor. *Jackson Nat'l Life Ins. Co. v. Merrill Lynch & Co.*, 32 F.3d 697, 699–700 (2d Cir.1994); *Falls Riverway Realty, Inc. v. City of Niagara Falls*, 754 F.2d 49, 53 (2d Cir.1985).

### 1. Post–Petition Administrative Claim pursuant to § 503(b) and Nunc Pro Tunc Retention Motion

C & W contends that the Bankruptcy Court erred in denying its motion for *nunc pro tunc* appointment and in refusing to treat its claim for commissions as a § 503(b) claim for administrative expenses. Section 503(b)(1)(A) of the Bankruptcy Code provides:

> (b) After notice and a hearing, there shall be allowed, administrative expenses... of this title, including-(1)(A) the actual, necessary costs and expenses of preserving the estate, including wages, salaries, or commissions for services rendered after the commencement of the case.

11 U.S.C. § 503(b)(1)(A).

C & W contends that its commission was incurred in the ordinary course of the Debtor's commercial real estate business. The Bankruptcy Code however, clearly requires court approval of professionals seeking to render service to a bankruptcy estate. Section 327(a) states:

> the trustee, with the court's approval, may employ one or more attorneys, accountants, appraisers, auctioneers, or other professional persons, that do not hold or represent an interest adverse to the estate, and that are disinterested persons, to represent or assist the trustee in carrying out the trustee's duties under this title.

11 U.S.C. § 327(a).

This provision anticipates that professionals who contemplate rendering service to estates first demonstrate relevant qualifications including competence, disinterest, efficiency, and document the need for the service. These measures afford interested parties such as creditors, the debtor or the U.S. Trustee an opportunity to comment on the propriety of retention. Since courts routinely impose this requirement on brokers seeking commissions, *see, e.g. In re Haley*, 950 F.2d 588, 590 (9th Cir.1991), Judge Hardin was correct in concluding that § 327(a) imposed on C & W an obligation to obtain prior court approval for its work and that C & W's failure to do so precludes it from pressing a post-petition administrative claim.

Because C & W's retention was not approved prior to its performance of post-petition services for Keren, C & W sought from the Bankruptcy Court *nunc pro tunc* retention. A number of courts have found that a bankruptcy court may grant *post facto* approval of an application for the retention of a professional where: 1) the employment satisfies the statutory requirements, and 2) the delay in seeking court approval resulted from extraordinary circumstances. *In re Jarvis*, 53 F.3d 416, 420 (1st Cir.1995); *In re F/S Airlease II, Inc. v. Simon*, 844 F.2d 99, 105–08 (3d Cir.1988); *See also Lavender v. Wood Law Firm*, 785 F.2d 247, 248–49 (8th Cir.1986) (per curiam). Judge Hardin concluded that this test had not been met.

In exercising its discretion regarding the existence of "extraordinary circumstances", a bankruptcy court considers factors such as:

> whether the applicant or some other person bore responsibility for applying for

approval; whether the applicant was under time pressure to begin service without approval; the amount of delay after the applicant learned that initial approval had not been granted; the extent to which compensation to the applicant will prejudice innocent third parties; and other relevant factors.

*In re F/S Airlease,* 844 F.2d at 105–06 (citing *In re Arkansas,* 798 F.2d 645, 650 (3d Cir. 1986)). This list is not exhaustive but useful. *In re Jarvis,* 53 F.3d at 421.

C & W bases its claims of the existence of extraordinary circumstances largely on the ground that the Debtor repeatedly encouraged C & W to assist in the resolution of a number of material issues concerning the lease and continually assured C & W that it would be paid. Assuming this to be true, C & W nonetheless was a sophisticated party who was aware of bankruptcy payment priorities and procedures despite any assurances from the Debtor. C & W's knowledge and sophistication is illustrated by its June 5, 1997 Motion to Assume. Notably, paragraph 6 of the Motion states:

> Uncertainty regarding assumption of the Commission Agreement is prejudicial to [C & W]. If the Lease is consummated, [C & W] will have an administrative claim against the estate for its commission. Assumption of the Commission Agreement will make clear the amount and terms of payment of that claim. If the Commission Agreement is not assumed, however, [C & W] must act expeditiously to protect its rights by filing and litigating a motion to fix and compel payment of its administrative claim.

Judge Hardin was correct in his conclusion, "[t]here is no excuse in this case for [C & W] not to have been alert to the necessity to be retained as a professional in this bankruptcy case. That fact is crystal clear by its June 5, 1997 motion." C & W did not file a motion to protect its rights until January 1998. These actions by C & W are not congruent with the existence of extraordinary circumstances. C & W undoubtedly was aware of the importance in having its retention approved by the court, yet choose to perform post-petition services in the absence of that approval.

In sum, C & W filed a Motion to Assume about two months after the Debtor filed its petition, voluntarily withdrew this motion, and then did not file its motion for retention until January 1998 while continuing to perform post-petition services for the Debtor presumedly until December 15, 1997 (the date the lease was signed). In view of C & W's delay from June 1997 to January 1998, this Court finds that C & W has not established extraordinary circumstances, and that the Bankruptcy Court did not abuse its discretion by denying *nunc pro tunc* retention.[2]

2. *Post–Petition Administrative Expense Motion Pursuant to the Agreement*

 In order to be entitled to a priority as an administrative expense for a claim based on a pre-petition contract, that contract must be executory. *See In re J.M. Fields, Inc.,* 22 B.R. 861, 864 (Bankr. S.D.N.Y.1982) (notwithstanding fact that real estate commissions did not become payable until after petition was filed, since commissions were earned pre-petition they constituted a general unsecured claim that did not arise pursuant to an executory contract). In the bankruptcy context an executory contract is a contract in which the obligations of both the bankrupt and the other party to the contract are so far unperformed that the failure of either to complete the performance would constitute a material breach excusing the performance of the other party. *In re J.M. Fields,* 22 B.R. at 864 (quoting V. Countryman, *Executory Contracts in Bankruptcy: Part I,* 57 MINN.L.REV. 439, 460 (1973)); *See, e.g., Burley v. American Gas & Oil Investors (In re Heafitz),* 85 B.R. 274, 282 (Bankr. S.D.N.Y.1988). In other words, the party to a purported executory contract must have some affirmative duty to act. *See generally, In re J.M. Fields,* 22 B.R. at 863, 865.

---

**2.** Because we find that C & W does not pass the extraordinary circumstances standard, we do not address C & W's contention that Judge Hardin erred in stating that professionals may not seek approval for their own employment from the court. C & W points to no precedent from this Circuit and we have found none inconsistent with Judge Hardin's conclusion.

■ A claim based on an executory contract is entitled to priority if the trustee or debtor-in-possession elects to assume the contract or if the estate receives benefits under it. *In re Barney Schogel, Inc.* 12 B.R. 697, 720 (Bankr.S.D.N.Y.1981) (citing *American Anthracite and Bituminous Coal Corp. v. Leonardo Arrivabene, S.A.,* 280 F.2d 119, 124 (2d Cir.1960)).

C & W claims it performed services under an executory contract that was never rejected and the Debtor enjoyed the benefits of those services. Specifically, C & W contends that because the Agreement states that it is to be governed by the laws of New York, whether the contract is executory should be construed in light of New York law, which requires the broker to be the procuring cause of a meeting of the minds between the parties in order to earn a commission. *ERA Joseph Green Real Estate, Inc. v. Daubert,* 186 A.D.2d 885, 887, 588 N.Y.S.2d 922 (3d Dept.1992). Consequently, C & W contends that the contract was executory because it was obligated to procure a meeting of the minds between Keren and Witco, and had to resolve numerous material issues between them before the lease could be consummated and its commission earned.

■ New York law, however, permits the parties to contract around this requirement. *See Rennert Diana & Co., Inc. v. Ziskind, et al.,* 191 A.D.2d 545, 595 N.Y.S.2d 68 (1993). The Agreement entered into by C & W and the Debtor provided that C & W would receive its commission upon consummation of the lease without requiring more. The Agreement provided that, "[n]othing in the foregoing shall impair Broker's entitlement to a commission in the event Broker is the procuring cause of a Lease after the expiration of this Agreement." Considering this language, it is difficult to credit C & W's claim that, though it would be entitled to a commission after the expiration of the Agreement, it had to procure a meeting of the minds or be liable for a material breach.

The court below correctly concluded that, "[t]here can be no doubt that parties are at liberty to make a contract providing for a brokerage commission for services by the broker entitled to the commission that fall far short of meeting the common law requirement for a brokerage commission procuring a meeting of the minds." This is the case with the Agreement. Because C & W had no affirmative duties under the contract, it was not executory and thus cannot qualify as an administrative claim.

Notwithstanding the fact that the commission was payable post-petition, it was fixed pre-petition as of the date of the Agreement. *See In re J.M. Fields,* 22 B.R. at 865. If the payment obligation is incurred pre-petition, the fact that payment may be dependent upon a post-petition contingency is irrelevant. *In re Precision Carwash Corp.,* 90 B.R. at 38 (citing *Denton & Anderson Co. v. Induction Heating Corp.,* 178 F.2d 841 (2d Cir.1949)). Again, the court below noted correctly, "[i]t is entirely understandable that without any contractual obligation to do so a broker would attempt to play a constructive role to bring about the transaction which was a pre-condition to its entitlement to a commission, but that does not mean that it had any obligation to do so."

■ In support for its claim that it supplied a benefit to the estate, C & W also points to its post-petition work that resolved the numerous material issues between the Debtor and Witco and resulted in a lease for almost three times the amount of space Witco was originally seeking. A creditor who fully performs under a contract prior to the filing of the petition, however, is not entitled to an administrative expense even though post-petition services may have resulted in a direct benefit to the estate, *In re The Charter Co.,* 52 B.R. 267, 270 (Bankr.M.D.Fla.1985), particularly where, as here, the creditor elected not to obtain court approval prior to rendering those services. Accordingly, the Bankruptcy Court could properly have declined C & W's claim as an administrative expense.

**CONCLUSION**

For the foregoing reasons the Bankruptcy Court's order is affirmed.

SO ORDERED.