**In re Anthony J. NAPOLEON, Debtor.**

**Bankruptcy No. 89–30612 RTL.**

United States Bankruptcy Court,
D. New Jersey.

May 26, 1999.

Edward G. O'Byrne, Totowa, New Jersey, Wilentz, Goldman & Spitzer, P.C., Louis T. De Lucia, Woodbridge, New Jersey, for Edward G. O'Byrne.

Karen E. Bezner, Scotch Plains, New Jersey, for Chapter 7 trustee.

Teich, Groh & Frost, Barry W. Frost, Trenton, New Jersey, for creditor, Sal Colino.

Patricia A. Staiano, United States Trustee, by Fran B. Steele, Newark, New Jersey.

### OPINION

RAYMOND T. LYONS, Bankruptcy Judge.

This matter comes before the court on the application of Edward G. O'Byrne, Esq. for first and final allowance of compensation and expenses as special counsel retained by the Chapter 7 trustee to pursue a legal malpractice claim. The court has jurisdiction over the matter pursuant to 28 U.S.C. § 1334, 28 U.S.C. § 157(b)(1) and the Standing Order of the United States District Court for the District of New Jersey dated July 23, 1984. This is a core matter under §§ 157(b)(2)(A) and (O). The application includes expenses for three experts employed by Mr. O'Byrne during the malpractice litigation. An objection to the allowance of the application was filed by one of the unsecured creditors. The creditor objected to any reimbursement for the expert fees since the bankruptcy court had not authorized retention of such professional persons pursuant to 11 U.S.C § 327. Without such court approval, it was argued, special counsel was not entitled to payment from the estate.

For the reasons set forth below, the court holds that there is no requirement pursuant to 11 U.S.C. § 327 that court authorization be obtained prior to the employment of experts by special counsel. This opinion does not address the reasonableness or necessity of the expenses for the experts employed by Special Counsel. That subject is dealt with in a separate opinion. The following constitutes the court's findings of fact and conclusions of law.

### FACTS

On December 15, 1989 a petition under Chapter 11 of the United States Bankruptcy Code, 11 U.S.C. § 1101, et seq., was filed by Anthony J. Napoleon ("Debtor"). The court converted the case from Chapter 11 to Chapter 7; and on May 1, 1991, Karen E. Bezner, Esq. was appointed Chapter 7 trustee.

According to the Debtor, the precipitating factor leading to the bankruptcy filing was the failure of a real estate project in Winslow Township, New Jersey, known as The Racquet Club. Sometime after the bankruptcy filing, the Debtor consulted with Edward G. O'Byrne, Esq. regarding the failure of the project. In early 1993 the Debtor signed a retainer agreement with O'Byrne whereby O'Byrne was to

represent the Debtor in a legal malpractice action against the former attorney who advised him on the Racquet Club project. On July 2, 1993, the Debtor initiated the litigation by filing a complaint in the Superior Court of New Jersey, Bergen County, Law Division, (the "State Court Action"). Neither the Debtor nor O'Byrne reported the filing of the State Court Action to the Trustee or to the Bankruptcy Court, even though the bankruptcy case remained open. According to the Debtor, he filed the State Court Action himself because he did not understand that the cause of action belonged to the bankruptcy estate. It should also be noted that the Debtor had neglected to include the State Court Action as an asset of the estate on his bankruptcy schedules.

The Trustee learned of the pending litigation involving the Debtor when she was served with a motion to dismiss filed by the defendants in the State Court Action. The basis for the defendants' motion was that the Debtor did not have standing to bring such litigation because the cause of action belonged to the bankruptcy estate. Shortly after learning of this litigation, the Trustee was substituted as the plaintiff and true party in interest in the State Court Action.

After being substituted as plaintiff in the State Court Action, the Trustee sought Bankruptcy Court approval to retain O'Byrne as special litigation counsel pursuant to 11 U.S.C. § 327. Because nearly two years had passed since the filing of the complaint, the Trustee believed it in the best interest of the estate to allow O'Byrne to continue with the prosecution of the litigation, which by this time was well advanced through initial discovery. Attached to the Trustee's application to retain special counsel was a copy of the retainer agreement between the Debtor and O'Byrne. The retainer agreement provided for a contingency fee calculated as follows: 33 1/3% of the first $250,000 net recovery; 25% of the next $250,000 net recovery and 20% of the next $500,000 net recovery. Regarding expenses the retainer agreement provided, "[i]n addition to legal fees, you may be required to pay for expenses in connection with the institution and prosecution of your claim. Such expenses may include, among other things, experts' fees and expenses for other testimony or evidence...." By Order dated March 8, 1995, the court authorized the retention of O'Byrne as special litigation counsel to the Trustee for the continued prosecution of the State Court Action. During the course of the prosecution of the State Court Action, Special Counsel employed three experts: Milton Diamond, Esq., James J. Carroll, C.P.A. and Lewis Goldshore, Esq.

Finally, after several years of bitter and protracted litigation, settlement of the State Court Action was achieved by the parties. The settlement provided for the payment of $360,000 by the defendants in exchange for release of all claims by the Trustee. The settlement was ultimately approved by the state court as set forth in the Court Approved Stipulation of Settlement dated August 12, 1997. At the request of the Trustee, the settlement was also subsequently approved by the Bankruptcy Court on November 17, 1997.

On March 8, 1999 Special Counsel filed his application requesting compensation in the amount of $97,048.63 based on the contingency fee formula. In addition the application sought reimbursement of costs and expenses totaling $55,105.39 including the expenses for the three experts. According to the application, Mr. Goldshore prepared an expert report on land use and environmental matters, Mr. Diamond prepared an expert report on the issue of legal malpractice, while Mr. Carroll provided consulting services regarding the financial feasibility of the proposed real estate project and the damages suffered by the Debtor as a result of the legal malpractice. An unsecured creditor, Mr. Sal Colino, filed an objection to the application. Colino was troubled by Special Counsel's requested allowance of $55,105.39 in expenses. According to the objection, 11

U.S.C. § 327 required the court to approve the retention of any professional person on behalf of the Trustee. Due to the lack of compliance with § 327, Colino requested that the court disallow reimbursement of any expert fees.

## DISCUSSION

The issue to be determined by the court is whether the Trustee was required to obtain prior court authorization to retain experts in accordance with 11 U.S.C. § 327. This court concludes that the Trustee was not required to seek prior court authorization before the engagement of expert witnesses by Special Counsel because those experts were not professional persons and were not employed by the Trustee within the meaning of § 327(a).

Section 327(a) of the Bankruptcy Code provides:

> Employment of professional persons.
> (a) [T]he trustee, with the court's approval, may employ one or more attorneys, accountants, appraisers, auctioneers, or other professional persons, ... to represent or assist the trustee in carrying out the trustee's duties under this title.

## A. "Professional Persons" under Section 327(a).

Most courts have come to the conclusion that there is no requirement of prior court authorization for retention of an expert witness because an expert is not a "professional person" within the meaning of § 327.[1] In arriving at this conclusion, the courts have often looked at the duties performed by the professional person and the roles he or she assumed in the bankruptcy case. In order to be considered a "professional person" within the meaning of § 327, it is not enough that the party be a professional by education or training. Instead he or she must also play an integral role in the administration of the bankruptcy case. The professional could assist the trustee with important activities, such as obtaining post-petition financing, negotiating creditor claims or formulating a plan of reorganization. It is these types of activities that rise to the level necessary to be considered a "professional person" under § 327(a). In the instant case, the experts employed by Special Counsel merely assisted her with the prosecution of the State Court Action. These experts in no way assisted the Trustee with the administration of the bankruptcy case. Therefore,

1. See *In re Argus Group 1700, Inc.,* 199 B.R. 525 (Bankr.E.D.Pa.1996) ("[I]t is the person's duties, not his status, that is determinative"); *In re First Am. Health Care of Ga., Inc.,* 208 B.R. 996 (Bankr.S.D.Ga.1996) ("[A]n accountant who is retained solely as an expert witness in collateral litigation does not assume a central role in the administration of the bankruptcy"); *Elstead v. Nolden (In re That's Entertainment Marketing Group, Inc.),* 168 B.R. 226 (N.D.Cal.1994) ("While one could argue that the litigation involves an attempt to 'acquire assets of (sic) behalf of the estate,' the expert witness plays only a tangential role in this process, and thus under these circumstances the accountants were not 'professionals' within the meaning of § 327."); *In re Sieling Assoc. Ltd. Partnership,* 128 B.R. 721 (Bankr.E.D.Va.1991) (environmental toxicology consultant, although a member of a profession, is not a professional person as used in Section 327(a)); *In re D'Lites of Am., Inc.,* 108 B.R. 352 (Bankr.N.D.Ga.1989) ("a 'professional person' is one who takes a central role in the administration of the bankruptcy estate and in the bankruptcy proceedings, as opposed to one who provides services to the debtor that are necessary whether the petition was filed or not"); *In re Babcock Dairy Co. of Ohio,* 70 B.R. 691 (Bankr.N.D.Ohio.1987) ("it seems that an expert witness is in a more 'tangential relationship' with the administration of the estate. It cannot reasonably be inferred how such testimony can be construed to have measurably 'affected the administration' of the estate."); *In re Johns–Manville Corp.,* 60 B.R. 612 (Bankr.S.D.N.Y.1986) ("The penumbra of the § 327(a) term 'other professional persons' is quite obviously not intended to cover without limitation all those persons of education, ability and accomplishment in any calling who may be regarded as professionals based upon considerations of societal, governmental or academic accreditation, or their own self-esteem.") and *In re Seatrain Lines, Inc.,* 13 B.R. 980 (Bankr. S.D.N.Y.1981) ("For the purposes of section 327(a), 'professional person' is limited to persons in those occupations which play a central role in the administration of the debtor proceedings.").

under the reasoning of the cited cases these experts were not "professional persons" within the meaning of § 327(a).

## B. No Contractual Relationship With the Trustee.

The court also concludes that the Chapter 7 Trustee had no direct contractual relationship with the experts employed by Special Counsel. The only "professional person" retained by the Trustee in this case was O'Byrne to prosecute the State Court Action. Under questioning by the court, the Trustee declared that she played no part in the selection of the experts nor did she negotiate or approve the terms of their compensation. Indeed, O'Byrne had hired the experts long before the Trustee ever knew about the litigation. Thus, it should have been clear to the experts and O'Byrne that the experts were entitled to be paid by O'Bryne whether or not the litigation produced any recovery. The parties were unclear in this regard, however, because when Goldshore expressed concern about payment of his fee, O'Byrne referred him to the Trustee. She responded by letter to Goldshore, "you will be paid your costs before any litigation proceeds are distributed to creditors of this estate, because your services helped to retrieve the fund."

Apparently, O'Byrne never acknowledged to Goldshore his responsibility for payment of expert witnesses. Nevertheless, before the court O'Byrne admitted that, had the suit produced no funds, he would have been responsible for compensating the experts.[2] In his Certification in Opposition to Motion to Disqualify Special Counsel and Deny Compensation filed on January 21, 1997, O'Byrne stated, "[i]n fact, if not successful in this lawsuit, it is my understanding that the estate will owe

absolutely nothing to myself *or anyone else* in connection with the litigation of this case." (emphasis added).

In a letter to the court in support of his application, O'Byrne wrote, "I am sure this Court will recognize that Mr. Diamond took a big risk in agreeing to stay on, for he might very well have lost his $9,875 initial fee, and his time and valuable services for the Trustee." O'Byrne misperceived his obligation to Diamond. O'Byrne hired Diamond and remains liable to Diamond regardless of the outcome of the litigation or this court's determination on O'Byrne's application for reimbursement of expenses. In a situation such as this where the estate has no assets, it would impugn the expert's impartiality if he were hired directly by the trustee. The expert's compensation would be dependent on the outcome of the litigation and his testimony could be attacked on cross-examination as biased.

Although the parties, apparently, never fully considered their relationship, the court finds that the Trustee employed only one professional—O'Byrne as Special Counsel. The Trustee had no contractual relationship with any of the experts. O'Byrne hired the experts. Their contract was with him. O'Byrne has the right to seek reimbursement for his expenses for expert witnesses. The expert witnesses have no right to apply for direct allowance from the estate.[3] No matter how much the court allows as O'Byrne's actual and necessary expenses under § 330, that will not limit the amount O'Byrne may owe the experts under their individual contracts with him.

The objector cites *In re Marlin Oil Co.,* 83 B.R. 50 (Bankr.D.Colo.1988), for the proposition that prior court authorization pursuant to § 327(a) is necessary before

---

**2.** O'Byrne candidly admitted that in his experience experts in unsuccessful cases often compromise their fees. In particular, experts repeatedly used by O'Byrne were willing to reduce or waive fees where there had been no recovery. The propriety of this practice is not before the court.

**3.** In their brief, Wilentz, Goldman & Spitzer, P.C. styled themselves as attorneys for the applicants Edward G. O'Byrne and Milton Diamond; however, the only applicant is O'Byrne. Diamond has no right to apply for allowance of fees and expenses because he was not employed by the Trustee.

an expert may be employed by a debtor or trustee. In *Marlin*, Natural Gas Associates of Colorado ("NGA") had been retained as an expert in litigation commenced by the debtor prior to its Chapter 11 petition. NGA must have had a direct contractual relationship with the debtor because it filed a proof of claim in the case and refused to perform any further services as an expert until it was paid. On the debtor's application, the court authorized payment of NGA's pre-petition invoice. Subsequently, NGA filed an amended proof of claim seeking a priority administration expense for its post-petition services. The court denied the claim. Without analysis, nor reference to any of the cases cited in footnote one above, the court stated, "NGA is clearly a 'professional person' as contemplated in [§ 327].... Further, NGA, because it is a 'professional person', is not entitled to payment for any of its post-petition services because it did not comply with the specific Bankruptcy Code requirements that would entitle it to payment." *Id.* at 51–52.

*Marlin* is unique among the reported opinions in holding an expert witness to be a professional person within the meaning of § 327(a). This court will follow the majority cited in footnote one above. Furthermore, *Marlin* is distinguishable because in that case the debtor had a direct contractual relationship with NGA both pre and post petition. NGA's filing of a proof of claim for its pre-petition debt and an amended proof of claim for its post-petition fees is evidence that NGA dealt directly with the debtor and debtor in possession. In the words of § 327, NGA was employed by the debtor in possession. In this case, the Trustee had no direct contractual relationship with any of the experts. She did not employ these experts within the meaning of § 327(a).

The court notes that where special counsel is retained by a trustee to prosecute non-bankruptcy litigation, the trustee has a duty to oversee these matters to ensure that there is no overreaching or impropriety. Although the experts were retained by Special Counsel prior to the Trustee being substituted as the plaintiff in the State Court Action, the Trustee should have monitored the expenses of Special Counsel. A trustee cannot retain special litigation counsel and allow him free reign to incur expenses without supervision. To her credit, the Trustee protested Diamond's initial invoice of $70,000 which he subsequently reduced to $26,000 as a result of her protest. Perhaps closer monitoring of Special Counsel's expenses would have eliminated any question as to reasonableness at this late stage.

### CONCLUSION

For the foregoing reasons, the court finds that prior court approval for retention of expert witnesses by Special Counsel to the Trustee was not required because those experts were not professional persons and were not employed by the Trustee within the meaning of § 327(a). Colino's objection to Special Counsel's application on this ground will be overruled.