**In re PONCE MARINE FARM, INC.,**
**Midwest Trading Co., Inc.**

**C. David Butler, U.S. Trustee,**
**Appellant,**

**v.**

**Indiano, Williams & Weinstein–**
**Bacal, Appellee.**

**No. Civ. 98–1580(JP).**

United States District Court,
D. Puerto Rico.

March 9, 2001.

488

Brian K. Tester, Fiddler, González & Rodríguez, San Juan, P.R., for plaintiff.

Jeffrey M. Williams, Indiano & Williams, PSC, San Juan, P.R., Stuart A. Weinstein–Bacal, Weinstein–Bacal & Associates, PSC, Old San Juan, P.R., for defendant.

## OPINION AND ORDER

PIERAS, Senior District Judge.

The Court has before it an appeal pursuant to 28 U.S.C. § 158(a) from the March 30, 1998 Opinion and Order of the United States Bankruptcy Court for the District of Puerto Rico, finding that Appellee and former counsel for Debtors, Stuart Weinstein Bacal ("Weinstein"), should have disclosed a potential conflict of interest on or before February 15, 1996 and approving his application for compensation only for his representational activities prior to that date, and further approving, with minor downward adjustments, the reimbursement of expenses. The issues before this

Court are whether the bankruptcy court erred in concluding that Weinstein was a "disinterested person" within the meaning of section 101(14) of the Bankruptcy Code; whether the bankruptcy court erred in finding that Weinstein's duty to disclose the potential conflict attached on February 15, 1996; whether the bankruptcy court erred in approving Weinstein's retention of professionals sua sponte and nunc pro tunc; and whether that court erred in approving the payment of costs over the U.S. Trustee's objections. After careful review of the record and the arguments presented, the decision of the bankruptcy court is hereby **AFFIRMED.**

## I. BACKGROUND

The following summary of facts is drawn from the bankruptcy court's Opinion and Order of March 30, 1998. Debtor Ponce Marine Farm, Inc. petitioned for relief under Chapter 11 of the Bankruptcy Code on March 8, 1993, and Debtor Midwest Trading Company, Inc. filed a Chapter 11 bankruptcy petition on May 14, 1993 (collectively, "Debtors"). The bankruptcy court substantially consolidated these cases on June 10, 1993. On June 15, 1993, the Bankruptcy Court approved the employment of the law firm of Indiano, Williams & Weinstein–Bacal as counsel for Debtors, with Weinstein serving as lead counsel until Debtors terminated the relationship in August 1997. Debtors' Chapter 11 cases involved numerous lawsuits against individuals, corporations, banking institutions, and the federal government, and the litigation related thereto extended over a period of several years. Two settlement agreements, resulting in Martech Enterprises, L.C.'s ("Martech") acquisition of Debtors' mortgages, rest at the core of the dispute concerning the Weinstein's application for attorney's fees.

The first settlement agreement involved Debtors and Cooperativa de Ahorros y Crédito de la Policía de Puerto Rico ("Poli–Coop"). On February 8, 1994, Debtors objected to a secured claim by Poli–Coop for more than $2.5 million. After much litigation, Debtors and Poli–Coop reached an agreement in which Poli–Coop agreed to sell its secured claim for less than its face value to Martech. The second settlement agreement at issue involved Debtors and the Royal Bank of Canada ("Royal Bank"). On April 21, 1994, Debtors objected to a secured claim of approximately $300,000 by Royal Bank. Counsel for Debtors successfully negotiated an agreement in which Royal Bank assigned its interest to Martech for less than its face value. On February 15, 1996, Weinstein filed motions for approval of the two settlement agreements with the bankruptcy court; the court approved both agreements on April 11, 1996.

In or around August 1997, John P. White, President of the Debtor corporations, informed the U.S. Trustee's Office that Weinstein's father and brother were investors in Martech. At that same time, Weinstein's representation of Debtors terminated. In a declaration dated November 25, 1997 and submitted to the bankruptcy court, Weinstein confirmed that his father and brother were investors in Martech. Weinstein had not made an official disclosure prior to that date.

The U.S. Trustee filed an Objection to the Application for Compensation, asserting that Weinstein's family's connection constituted a conflict of interest that should be sanctioned by the denial of fees. The bankruptcy court determined that no actual conflict of interest existed, that Weinstein had zealously represented Debtors throughout the proceedings, and that Weinstein's efforts had only benefitted the estate. It concluded, however, that Weinstein should have made a full disclosure to the court because his father and brother's connection to Martech constituted a potential conflict of interest. The court then determined that Weinstein should have disclosed that potential conflict on February 16, 1996, the date on which Weinstein filed the applications for the approval of the settlement agreement between Mar-

tech and Debtors with the bankruptcy court, and it denied compensation for the period subsequent to that date.

The U.S. Trustee further opposed the approval of fees charged for travel time, conferences, and other expenses. The bankruptcy court reduced Weinstein's fees for travel time and conferences, but denied the majority of the U.S. Trustee's remaining objections to expenses, including its opposition to the reimbursement of expenses for a wetlands expert and a photographer, and to numerous billing entries alleged to be insufficiently detailed to permit a fair assessment of their reasonableness.

## II. STANDARD OF REVIEW

■ The Bankruptcy Court's findings of fact shall be upheld unless they are clearly erroneous, and its conclusions of law are reviewed de novo. *See T I Fed. Credit Union v. DelBonis,* 72 F.3d 921, 928 (1st Cir.1995); *Matter of Rosa,* 196 B.R. 231, 234 (D.Puerto Rico 1996) (Pieras, J.).

## III. DISCUSSION

### A. Disinterestedness

■ The Bankruptcy Code permits the employment of attorneys or other professional persons to represent or assist the trustee in carrying out the trustee's duties. *See* 11 U.S.C. § 327(a). To ensure that all professionals appointed pursuant to § 327(a) "tender undivided loyalty and provided untainted advice and assistance in furtherance of their fiduciary responsibilities," *Rome v. Braunstein,* 19 F.3d 54, 58 (1st Cir.1994), qualification for appointment as an attorney is limited to "disinterested persons" who do not possess or represent "an interest adverse to the estate." 11 U.S.C. § 327(a); *see also In re Martin,* 817 F.2d 175, 179 (1st Cir.1987). The purpose of the disinterestedness requirement is "to prevent even the appearance of a conflict irrespective of the integrity of the person or firm under consideration." *Martin,* 817 F.2d at 181 (quoting *In re*

*Codesco, Inc.,* 18 B.R. 997, 999 (Bankr. S.D.N.Y.1982)); *see also In re Matter of Consolidated Bancshares, Inc.,* 785 F.2d 1249, 1256 n. 6 (5th Cir.1986) ("standards for the employment of professional persons are strict, for Congress has determined that strict standards are necessary in light of the unique nature of the bankruptcy process"). An attorney is a "disinterested person" if he or she:

(A) is not a creditor, an equity security holder, or an insider;

(B) is not and was not an investment banker for any outstanding security of the debtor;

(C) has not been, within three years before the date of the filing of the petition, an investment banker for a security of the debtor, or any attorney for such an investment banker in connection with the offer, sale, or issuance of a security of the debtor;

(D) is not and was not, within two years before the date of the filing of the petition, a director, officer, or employee of the debtor or of an investment banker specific in subparagraph (B) or (C) of this paragraph; and

(E) does not have an interest materially adverse to the interest of the estate or of any class of creditors or equity security holders, by reason of any direct or indirect relationship to, connection with, or interest in, the debtor or an investment banker specified in subparagraph (B) or (C) of this paragraph, or for any other reason.

11 U.S.C. § 101(14). Of the five possible grounds for disqualification of a professional person, the instant case implicates only § 101(14)(E).

With respect to the concept of "adverse interest," the Bankruptcy Code does not define the term. Further, the First Circuit has remarked that because the definition of disinterested in § 101(14)(E) encompasses the concept of adverse interest, the ostensibly binary test in § 327(a) eclipses into a single inquiry in cases such as this. *See Martin,* 817 F.2d at 180 ("[T]he

twin requirements of disinterestedness and lack of adversity telescope into what amounts to a single hallmark.")

■■■ Section 328(c) provides a penalty for professional persons found to be under a conflict of interest. It provides, in relevant part:

[T]he court may deny allowance of compensation for services and reimbursement of expenses of a professional person employed under section 327 or 1103 of this title if, at any time during such professional person's employment under section 327 or 1103 of this title, such professional person is not a disinterested person, or represents or holds an interest adverse to the interest of the estate with respect to the matter on which such professional person is employed.

11 U.S.C. § 328(c). The bankruptcy court must determine "whether any competing interest of a court-appointed professional 'created either a meaningful incentive to act contrary to the best interests of the estate and its sundry creditors—an incentive sufficient to place those parties at more than acceptable risk—or the reasonable perception of one.' " *Rome v. Braunstein,* 19 F.3d 54, 58 (1st Cir.1994) (quoting *Martin,* 817 F.2d at 180). This inquiry does not focus on the good faith of the court-appointed professional; rather, the test is objective in nature. *See id.* The determination of whether an attorney possesses a conflict of interest under this rigorous standard is fact-specific, and therefore is reviewed by this Court for clear error. *See id.; see also In re DN Associates,* 3 F.3d 512, 515 (1st Cir.1993); *Martin,* 817 F.2d at 182. The bankruptcy court possesses broad discretion to fix an appropriate sanction, including the limitation or the denial in toto of the professional's remuneration. *See Rome,* 19 F.3d at 58; *DN Associates,* 3 F.3d at 514–15. Thus, "[w]hen we scrutinize factual determinations and discretionary judgments made by a bankruptcy judge, such as may be involved in calculating and fashioning appropriate fee awards, we give considera-

ble deference to the bankruptcy court...." *DN Associates,* 3 F.3d at 515.

■■■ Appellant argues that the bankruptcy court's determination of the date of conflict as arising on February 15, 1996 was clearly erroneous. In framing the issue in this way, however, Appellant misses the boat. The bankruptcy court, in determining that remuneration would be disallowed from the date the conflict arose, was acting within its discretion to fashion an appropriate sanction pursuant to § 328(c). That section provides the bankruptcy court various permissible remedies, ranging from a reduction of remuneration to an outright denial of all attorney's fees and expenses. *See* 11 U.S.C. § 328(c). It is important to highlight that the bankruptcy court "may grant attorney's fees even if a conflict of interest is demonstrated, as long as such an award is sensible in light of the circumstances." *DN Associates,* 3 F.3d at 514 (citing *In re Kendavis Industries Int'l, Inc.,* 91 B.R. 742, 761 (Bankr.N.D.Tex.1988)).

■■■ The issue then is not whether the bankruptcy court erred in determining the date of conflict, but whether, given its conclusion that Weinstein at some point in the proceedings came to be under a potential conflict of interest that should have been disclosed, the sanction imposed was reasonable in light of the circumstances. The bankruptcy court held that attorneys' fees would be disallowed from the date that "the duty to disclose arose unequivocally." (Op. & Order at 6). Although the court's factual determinations concerning when the potential conflict arose are not irrelevant, the bankruptcy court did not have to pin down the date with unflagging accuracy. In fashioning the sanction as it did, the bankruptcy court carefully considered the totality of the circumstances, including the importance of full disclosure on the one hand, and the "magnitude of former counsel for debtor's arduous work for the debtor" on the other. (Op. & Order at 5). That the court determined, for purposes of imposing sanctions under

§ 328(c), that the duty to inform of a potential conflict arose at that point where disclosure unequivocally should have been made, rather than some other date, does not render such determination clearly erroneous. Rather, the court acted within its discretionary powers to impose an appropriate sanction pursuant to § 328(c).

Appellant suggests that under *Rome,* a bankruptcy court must deny all compensation to an attorney found to be under an actual or potential conflict of interest, where the attorney fails to make a prompt disclosure. However, *Rome* itself expressly rejects such a reading. While failure to make a full and spontaneous disclosure of all facts material to a disqualifying conflict of interest permits the bankruptcy court to impose the most severe sanction available to it under § 328(c), the Circuit Court made clear that it "adopt[s] no per se or brightline rule invariably requiring denial of all compensation under section 328(c) [under these circumstances]." *Rome,* 19 F.3d at 62.

In *Rome,* the bankruptcy court disallowed an attorney's application for fees in full, on the grounds that the attorney's representation of the debtor in possession "produced virtually no benefit to creditors and loan participants" and because the attorney's concurrent representation of parties with conflicting interests was "patently inappropriate." *Id.* at 57. In addition, the attorney failed to disclose the conflict to the bankruptcy court in a timely fashion. *See id.* at 59–60. The bankruptcy court's decision to deny any compensation to the attorney was affirmed by the district court and by the First Circuit.

The case at bar, however, presents a distinguishable factual scenario. Although the bankruptcy court found that Weinstein failed, as the attorney in *Rome,* to make a prompt disclosure of a potential conflict, unlike *Rome* it went on to find that Wein-

stein acted in his client's best interest and that his representation greatly benefitted the estate. The bankruptcy court further concluded that Weinstein was under no actual conflict of interest, but only under a potential conflict that should have been disclosed. Even if this Court found that Weinstein was under an actual conflict of interest, however, reversal of the bankruptcy court's decision would not be warranted both because *Rome* is factually distinguishable, and because *Rome* does not stand for the proposition that the bankruptcy court must deny all fees when an attorney comes under an actual or potential conflict of interest that is not promptly disclosed to the court. As the First Circuit has stated, an appellate court is "poorly positioned to second-guess a bankruptcy court's judgment call in these circumstances...." *Id.* at 63. In conclusion, therefore, this Court holds that the ruling of the bankruptcy court sanctioning Weinstein by disallowing attorney's fees that accrued on or after February 15, 1996 was not clearly erroneous.

## B. Post Facto Approval of Retention of Professionals

Appellants next argue that the bankruptcy court erred in raising sua sponte, and approving post facto,[1] the retention and compensation of a wetlands expert and a professional photographer hired by Debtors. First, Appellants maintain that the bankruptcy court did not possess the authority to render a decision concerning the retention or compensation of the wetlands expert or professional photographer, because Debtors made no application for the same under 11 U.S.C. § 330. Second, Appellants contend that the bankruptcy court failed to apply the appropriate standard, enunciated in *In re Jarvis,* 53 F.3d 416 (1st Cir.1995), in granting the post facto retention of professional persons.

---

1. As a linguistic matter, although both parties utilize the term "nunc pro tunc" in their discussion of the Bankruptcy Court's after-the-fact approval to retain a professional person, the First Circuit has made clear that the concept is properly understood as the "post facto" retention of a professional.

Appellee argues that because the wetlands expert was retained only to serve as an expert witness in a collateral proceeding before the Environmental Protection Agency, and because the professional photographer was hired only to take photographs of the debtor's property, neither qualifies as a "professional person" for whom prior bankruptcy court approval is required under 11 U.S.C. § 327(a). In the alternative, Appellee argues that the bankruptcy court acted within its discretionary powers in awarding compensation post facto based on the existence of extraordinary circumstances.

 Section 327(a) of the Bankruptcy Code authorizes a trustee or debtor-in-possession to employ "professional persons ... to represent or assist the trustee in carrying out the trustee's duties under this title." 11 U.S.C. § 327(a). The plain language of section 327(a) neither expressly forbids nor expressly permits the post facto authorization of professional services. The First Circuit, taking into consideration the "overarching equitable design of the Chapter 11 process," has concluded that bankruptcy courts should be permitted to entertain post facto applications for the retention of professional persons. *In re Jarvis*, 53 F.3d 416, 419 (1st Cir.1995). A bankruptcy court's decision to approve or disapprove such an application is equitable in nature, and thus an exercise of the court's discretion. *See id.* at 420.

 The bankruptcy court's discretion, however, is not unfettered. The applicant for a post facto authorization of a professional must demonstrate "both the professional person's suitability for appointment and the existence of extraordinary circumstances sufficient to excuse the failure to file a timely application." *Id.* In evaluating the suitability of the professional's appointment, the bankruptcy court "must satisfy itself that, had the application been filed on time, the court would have authorized the professional's employment then and there." *Id.* If the appli-

cant meets this first requirement, then the bankruptcy court must inquire into the circumstances surrounding the application, and determine whether they are sufficiently extraordinary to warrant post facto approval. *See id.; see also In re Bolton–Emerson, Inc.*, 200 B.R. 725, 731 (D.Mass. 1996). Bankruptcy courts may consider, among other factors,

> whether the applicant or some other person bore responsibility for applying for approval; whether the applicant was under time pressure to begin service without approval; the amount of delay after the applicant learned that initial approval had not been granted; [and] the extent to which compensation to the applicant will prejudice innocent third parties....

*Jarvis*, 53 F.3d at 420–21 (quoting *F/S Airlease II, Inc. v. Simon*, 844 F.2d 99, 105–06 (3d Cir.), *cert. denied*, 488 U.S. 852, 109 S.Ct. 137, 102 L.Ed.2d 110 (1988)); *see also In re Keren Ltd. Partnership*, 225 B.R. 303, 306–07 (S.D.N.Y.1998); *Rodriguez–Quesada v. United States Trustee*, 222 B.R. 193, 199 (D.Puerto Rico 1998). Mere oversight or inadvertence does not constitute an extraordinary circumstance. *See Jarvis*, 53 F.3d at 421. The District Court reviews the decision of the bankruptcy court on an application for post facto retention of a professional for abuse of discretion. *See id.* at 420 (citing *In re Land*, 943 F.2d 1265, 1266 (10th Cir.1991)).

 Here, the bankruptcy court found that had the application for the authorization of professional services been filed on time, it would have been approved. Although Appellants attempt to make much of the fact that an application was never submitted to the bankruptcy court, Appellants cite no cases to support their argument that the bankruptcy court was disempowered to authorize the compensation of the wetlands expert and professional photographer, after debtors in fact requested such compensation, merely because debtors' request was not couched in the terms of 11 U.S.C. § 327(a). The

Court therefore rejects Appellant's argument.

Turning to Appellant's next contention, that the bankruptcy court failed to apply the correct standard, as enunciated in *In re Jarvis*, in granting the post facto retention of professional persons on behalf of Debtors, the Court finds the same without merit. This Court agrees with Appellee that the wetlands expert and the professional photographer are not "professional persons" for whom prior court authorization is required under § 327(a), and therefore affirms the bankruptcy court's award of expenses for these experts on this alternative ground.

■■■■ A professional person is one who plays a central role in the administration of the bankruptcy estate and in the bankruptcy proceedings. *In re That's Entertainment Marketing Group, Inc.*, 168 B.R. 226, 230 (N.D.Cal.1994) (citing *Matter of D'Lites of America, Inc.*, 108 B.R. 352 (Bankr.N.D.Ga.1989)). "A person's status as a 'professional' is not determinative; the inquiry focuses on that person's duties. If the duties involved are central to the administration of the estate such duties are professional in nature." *Id.* Further, most courts that have addressed the issue of whether prior court authorization is necessary for the retention of an expert witness have found that expert witnesses are not "professional persons" within the meaning of § 327(a). *See In re Napoleon*, 233 B.R. 910, 913–14 (Bankr.D.N.J.1999); *see also In re First Am. Health Care of Ga., Inc.*, 208 B.R. 996 (Bankr.S.D.Ga. 1996) ("[A]n accountant who is retained solely as an expert witness in collateral litigation does not assume a central role in the administration of the bankruptcy."); *In re Sieling Assoc. Ltd. Partnership*, 128 B.R. 721 (Bankr.E.D.Va.1991) (environmental toxicologist retained as a consultant to provide expert testimony was not a professional person under section 327(a)); *In re Johns–Manville Corp.*, 60 B.R. 612 (Bankr.S.D.N.Y.1986).

■■■■ The bankruptcy court evaluated Debtors' request for fees for the wetlands expert and professional photographer under the § 327(a) regime without discussing the nature of their duties or making factual findings in that regard. It is the view of this Court, however, that the definition of "professional person" established by the case law simply admits of no possibility that a wetlands expert or a professional photographer could be retained to carry out duties "central to the administration of the [bankruptcy] estate." *That's Entertainment Marketing Group*, 168 B.R. at 230. The expertise of a wetlands expert or a professional photographer does not extend to matters of bankruptcy estate administration or to core participation in bankruptcy proceedings. *See First Am. Health Care of Ga.*, 208 B.R. at 998; *Sieling Assoc. Ltd. Partnership*, 128 B.R. at 723. Thus, the bankruptcy court erred in concluding that the wetlands expert and professional photographer were "professional persons" under § 327(a). This error, however, was harmless, given that the court awarded fees for these consultants' services. *See T I Federal Credit Union v. DelBonis*, 72 F.3d 921, 929 (1st Cir.1995) ("In this circuit, '[a]n appellate court is not limited to the legal grounds relief upon by the district court, but may affirm on any independently sufficient grounds.'") (quoting *Estate of Soler v. Rodriguez*, 63 F.3d 45, 53 (1st Cir.1995)).

### C. Documentation of Attorneys' Fees and Expenses

Appellant's final contention is that the bankruptcy court erred in failing to sustain fully the U.S. Trustee's objections to attorney's fees and seven categories of expenses. Appellant argues that a number of the entries in former counsel for Debtor's application for attorney's fees and expenses are insufficiently detailed to justify compensation. Appellant urges this Court to find that the bankruptcy court abused its discretion in approving compensation for the objected-to entries and, as a legal matter, asks this Court to reverse and

remand with instructions for the bankruptcy court to apply the standards enunciated by the United States Bankruptcy Court for the District of Vermont in *In re S.T.N. Enterprises, Inc.*, 70 B.R. 823 (Bankr.D.Vt. 1987). The ostensible basis for the latter request is Judge Lamoutte's expressed support for the standard set forth in *S.T.N. Enterprises* in his Opinion and Order pertaining to the award of attorney's fees and expenses in the case at bar.

 Section 330 of the Bankruptcy Code and Bankruptcy Rule 2016 govern applications for, and the award of, final compensation for the services rendered by a professional whose employment has been previously approved by the court. Section 330(a)(1) states that the court may award

(A) reasonable compensation for actual, necessary services rendered by such trustee, examiner, professional person, or attorney, as the case may be, and by any paraprofessional persons employed by such trustee, professional person or attorney, as the case may be, based on the nature, the extent and the value of such services, and the cost of comparable services other than in a case under this title; and

(B) reimbursement for actual, necessary expenses.

11 U.S.C.A. § 330(a). A detailed application for compensation must be filed to those effects. Rule 2016 provides, in relevant part, that: "An entity seeking interim or final compensation for services, or reimbursement of necessary expenses, from the estate shall file with the court an application setting forth a detailed statement of: (1) the services rendered, time expended and expenses incurred, and (2) the amounts requested." Fed.R.Bankr.P. 2016(a). The applications for compensation of professional fees must be self-contained; in other words, they must be "sufficiently detailed and accurate to place the court in a position to make an independent decision on the application." *In re Fruits Int'l, Inc.*, 87 B.R. 769, 772 (Bankr.D.Puerto Rico 1988) (quoting *In re Matter of*

*Perez Hernandez*, 73 B.R. 329, 331 (Bankr.D.Puerto Rico 1987)); *see also Grendel's Den, Inc. v. Larkin*, 749 F.2d 945 (1st Cir.1984).

 Bankruptcy courts "are accorded broad discretion in determining reasonable fee allowances." *In re Casco Bay Lines, Inc.*, 25 B.R. 747, 753 (1st Cir. BAP 1982). The role of the reviewing court confronting a challenge to a fee determination is, accordingly, circumscribed. As the First Circuit acutely observed concerning the review of applications for fees:

The difficulty for both fee-setting and fee-reviewing courts, in a field so susceptible to arbitrariness, is the achievement of decision-making that is fair to the parties and understandable to the community at large yet not unnecessarily burdensome to the courts themselves. Thus, we normally prefer to defer to any thoughtful rationale and decision developed by a trial court and to avoid extensive second guessing.

*Grendel's Den, Inc. v. Larkin*, 749 F.2d 945, 950 (1st Cir.1984). The Court went on to note that "[o]ccasionally, however, we feel constrained to examine a fee appeal in greater depth, particularly if it presents novel problems or claims. The absence of contemporary time records, in conjunction with extraordinarily high hourly rates and claims for time spent in the most punctilious appellate research and preparation, makes this such a case." *Id.* The instant action, however, is not such a case. The objections raised by Appellant, in large part, amount to microscopical nitpicking which, in the opinion of this Court, is a colossal waste of precious judicial resources. *Cf. In re Bank of New England Corp.*, 142 B.R. 584, 586 (D.Mass.1992) ("[C]ourts should not 'spend nonexistent Court resources to track down every entry, correlate them against other fee applications, and delete those entries insufficiently substantiated.' ") (internal brackets and ellipses omitted). A review of the bankruptcy court's legal and factual findings follows.

### 1. Attorney's Fees

In *Fruits International,* the bankruptcy court established the level of detail expected in applications for attorney's fees in the district: "[A]ll applications for attorney's fees filed hereinafter before this court shall identify each task billed to the estate, indicate the date or dates when the services were performed, the amount of time spent, the person performing the service and his hourly rate, and a brief description of what was done." 87 B.R. at 772; *see also In re C.P. Del Caribe, Inc.,* 143 B.R. 11 (Bankr.D.Puerto Rico 1992). The bankruptcy court further directed that when requesting compensation for meetings, conferences, correspondence and telephone calls, the entry "should identify the participants, describe the subject matter of the communication and justify its necessity." *Fruits International,* 87 B.R. at 773. In that case, the bankruptcy court held that the application for compensation failed to meet this standard. One entry contained in the application at issue in *Fruits International,* for example, stated: "7/23/87 Meeting with Mr. Segal (.75 hours)." The court found that it was unable to ascertain whether this task was necessary and beneficial to the estate without a more detailed description of the task. *Id.* at 774. As a consequence, the court ordered the filing of a supplemental, and more detailed, application for compensation. *Id.*

In the instant case, the bankruptcy court first set forth the standard for the review of an application for attorney's fees, citing primarily to *Fruits International* and *S.T.N. Enterprises.* It then concluded, albeit tersely, that "[although the entries objected to by the U.S. Trustee are not particularly descriptive, they meet this [legal] standard and are considered satisfactory by the court]." (Op. & Order at 8). This Court first concludes that the bankruptcy court committed no error of law in its use of the *Fruits International* standard. Although Appellant suggests that Judge Lamoutte should have applied the more exacting standard for fee applications set forth in a case from the U.S. Bankruptcy Court for the District of Vermont, *S.T.N. Enterprises,* Appellant does not contend that a more rigorous standard than that set forth in *Fruits International* is necessary to comply with the statutory mandate in section 330 of the Bankruptcy Code and Rule 2016 of the Federal Rules of Bankruptcy Procedure. Absent the same, this Court sees no justification for ordering the wholesale importation of the *S.T.N. Enterprises* standard in this district.

Further, a review of the objected-to entries leads this Court to conclude that the bankruptcy court acted within the bounds of its discretionary authority in refusing to sustain all of Appellant's objections to the application for compensation. The entries pass muster because they identify each task billed to the estate, indicate the dates when the services were performed, the amount of time spent, the person performing the service, his hourly rate, and a brief description of what was done. *See Fruits International,* 87 B.R. at 772. The bankruptcy court is in the best position to evaluate whether, based on the description provided, the task was necessary and beneficial to the estate, and the time dedicated to the task was reasonable in light of the circumstances of the case. *See Martin,* 817 F.2d at 182 ("Historically, bankruptcy courts have been accorded wide discretion in fact intensive matters ..."). This Court's review of the record discloses no abuse of discretion in that regard. Accordingly, the bankruptcy court's award of attorney's fees to Weinstein is hereby **AFFIRMED.**

### 2. Expenses

Appellants tender objections to various expenses alleged to be inadequately described or miscalculated. Noting the intensity and fast-paced nature of the litigation involved in the case, the bankruptcy court found reasonable the reimbursement of costs for ninety-three expense entries

described only as incoming or outgoing faxes [2]; $449.83 in miscellaneous postage expenses; $132.07 for miscellaneous telephone calls; $4,430.75 for miscellaneous photocopying expenses; $879.32 for computer research; and $564.06 in express mail, Federal Express, and UPS expenses. Appellant alleges that the bankruptcy court erred in justifying the reimbursement of these expenses based on the fast-paced nature of the litigation, because Appellant's objection was to the inadequate description of the same.

Only those expenses that are reasonable, actual, necessary, and supported by adequate documentation are reimbursable. *See Matter of Perez Hernandez*, 73 B.R. 329, 330 (Bankr.D.Puerto Rico 1987). Applications for the reimbursement of expenses must be "sufficiently detailed and accurate to place the court in a position to make an independent decision on the application." *Id.* at 331. Miscellaneous expenses for stamps, stationery, photocopies, telephone calls, and incidental secretarial expenses, which are compensable, must be described and itemized, not estimated. *See id.* at 332. At bottom, the basic duty of the bankruptcy court in reviewing applications for the reimbursement of expenses is "to determine that the expenses were actually and reasonably incurred by the trustee." *Id.* at 332 (citing *In re Thacker*, 48 B.R. 161, 163 (Bankr. N.D.Ill.1985)).

In *Perez Hernandez*, the bankruptcy court denied compensation for certain miscellaneous expenses, such as postage, photocopies, and telephone calls because those figures were estimated, rather than itemized. The court emphasized that "[t]he use of estimates is not the proper procedure to claim reimbursement of expenses." *Id.* at 331–32. In the case at bar, however, the application for reimbursement did not involve an estimation of miscellaneous expenses.

Although Appellant claims that the miscellaneous expenses were not described with sufficient particularity to permit the bankruptcy court to judge their reasonableness, this Court disagrees. When dealing with miscellaneous expenses of this nature, particularly postage, photocopies, and telephone calls, the bankruptcy court need not throw logic and common sense out the window when passing on their reasonableness. Thus, this Court finds that the bankruptcy court did not err in awarding the reimbursement of these expenses taking into account the nature and scope of the litigation before it.

Further, the Court holds that the bankruptcy court did not clearly err in awarding expenses for computer research and express mail, in light of the justifications provided for the same and the circumstances of the litigation. Again, it must be emphasized that this is not a case where debtor's counsel estimated rather than itemized such expenses; rather, the application for expenses included supporting documentation for the expenses claimed. Although certain entries could have been more detailed, the role of this Court is not to analyze each and every expense entry to decide whether, in its own estimation, the entries are sufficiently detailed. *See Grendel's Den*, 749 F.2d at 950. Rather, this Court's review is limited to ascertaining whether the bankruptcy court abused its discretion in finding these expenses reasonable and granting a fee award. For the reasons stated above, and based on the record before it, the Court finds no abuse of that discretion.

Finally, Appellant challenges the bankruptcy court's award of $1,841.40 in travel expenses. Appellant contends that the court erred in reimbursing $731.00 of this sum because former counsel for debtor's time records did not reflect an entry for that travel, thus suggesting, in Appellant's view, that such travel never took

---

**2.** The Court reduced the rate of reimbursement for each of the facsimiles from $1.00 per page to 25 cents per page, for a grand total of $260.50.

place and therefore could not have benefitted the estate. Appellant further contends that the bankruptcy court plainly erred in awarding $98.00 in travel expenses incurred to "Amtrack" because there are two entries in the same amount for the same day. Appellee, however, presented documentation and written justifications of these expenses to the bankruptcy court, and the court did not abuse its discretion in granting the award based on the factual record before it. Accordingly, the bankruptcy court did not plainly err in reimbursing travel costs.

## IV. CONCLUSION

In view of the foregoing, the Court hereby **AFFIRMS** the decision of the bankruptcy court.

**IT IS SO ORDERED.**