**In re CNH, INC. d/b/a Carbondale Nursing Home, Debtor.**

**Office of the U.S. Trustee, Movant,**

v.

**Patricia Ann McQuaide and Barry Felcher & Associates, Respondents.**

**No. 5–02–00491.**

United States Bankruptcy Court, M.D. Pennsylvania.

Jan. 14, 2004.

amount equal to the value of the property established under section 506(a).")

Gregory Lyons, Harrisburg, PA, for Movant.

Mark Wolkoff, Philadelphia, PA, for Respondents.

Ronald V. Santora, Wilkes Barre, PA, for Debtor.

## *OPINION*

JOHN J. THOMAS, Chief Judge.

This matter relates to the employment by the Chapter 11 Debtor, CNH, Inc., of Patricia Ann McQuaide and a limited liability corporation known as Barry Felcher & Associates (BFA). Known sometimes as Carbondale Nursing Home, CNH, Inc. provided long term care to those in need of physical assistance. McQuaide and BFA were retained and paid by the Debtor without prior court approval. The United States Trustee has filed a Motion for review and disgorgement of fees alleging Respondents should have been hired only on prior application to the Court pursuant to 11 U.S.C. § 327.

Pat McQuaide was an independent contractor hired by BFA but paid by the Debtor. She reported to BFA. Transcript of 06/12/2003 at page 8. She developed and implemented various nursing policies. *Id.* at 11. She developed a protocol to address shortcomings at the nursing home. She made recommendations regarding an existing administrator. *Id.* at 14. Ms. McQuaide helped structure a new salary scale. She could not hire and fire. She was paid at a rate of $38/hour.

BFA was retained to provide consulting services in such diverse areas as dietary, housekeeping, and laundry. In short, it made recommendations in every area except financial.

11 U.S.C. § 327 was preceded by Rule 215 under the Bankruptcy Act of

1898 regulating the appointment of attorneys and accountants and Rule 606 referring to the appointment of appraisers and auctioneers. The 1978 Code added the reference to "professional persons". The term professional is defined in the Merriam–Webster dictionary as "one that engages in a pursuit or activity professionally", with the adverb referring to an individual "engaged in one of the learned professions". What are those professions? "[A] calling requiring specialized knowledge and often long and intensive academic preparation." Webster's New Collegiate Dictionary 911 (1979).

With these broad definitions in mind, one could easily assume that every stock broker, financial manager, dentist, doctor, electrician and plumber would fit nicely within the definition of "professional". That has not been its application. Cases can be found that have applied § 327 to real estate brokers (*In re Haley,* 950 F.2d 588 (9th Cir.1991)); investment advisors (*In re Bicoastal Corp.,* 149 B.R. 216 (Bankr.M.D.Fl.1993)), management companies (*In re Lowry Graphics, Inc.,* 86 B.R. 74 (Bankr.S.D.Tex.1988)), business consultant (*In re First Merchants Acceptance Corporation,* 1997 WL 873551, 1997 Bankr.LEXIS 2245), employment agencies (*In re First Security Mortgage Co., Inc.,* 117 B.R. 1001 (Bankr.N.D.Okl.1990)), oil and gas operator (*In re Fretheim,* 102 B.R. 298 (Bankr.D.Ct.1989)), while at the same time excluding toxicologists (*In re Sieling Associates Ltd. Partnership,* 128 B.R. 721 (Bankr.E.D.Va.1991)), photographers (*In re Ponce Marine Farm, Inc.,* 259 B.R. 484 (D.Puerto Rico 1991)), and maritime engineer (*Matter of Seatrain Lines, Inc.,* 13 B.R. 980 (Bankr.D.N.Y.1981)).

The difficulty in defining a professional as used in § 327 is summarized in *In re First Security Mortgage Company, Inc.*

What is a "professional person" within the meaning of § 327(a) is not clear. A long line of cases commencing with In the *Matter of Seatrain Lines, Inc.,* 13 B.R. 980 (B.C., S.D.N.Y.1981) holds that ... In the context of a debtor proceeding, persons in occupations ordinarily considered professions are not necessarily professionals whose retention by the estate requires court approval. For the purposes of section 372(a)(sic), "professional person" is limited to persons in those occupations which play a central role in the administration of the debtor proceeding. Court approval is required for the retention of attorneys, accountants, appraisers, auctioneers and persons in other professions intimately involved in the administration of the debtor's estate, *id.* p. 981. Such cases do not recognize as "professional persons" under § 327(a) those who are involved in the "mechanics of [debtor's] operation," no matter how "important" their "role" may be in the outcome of reorganization, *id.* This approach, resting on such vague notions as "central," "intimate," "administration" and "mechanics," has been criticized as "difficult to apply and subject to arbitrary and inconsistent results, particularly when employment is sought early in a case and the degree of future participation is unknown," *In re Fretheim,* 102 B.R. 298, 299 (B.C., D.Conn.1989). An alternative test has been proposed, as follows: ... For § 327(a) to be applicable, an employee's function must be related to the administration of the debtor's estate ... ("[P]ersons with such a tangential relationship to the administration of the [debtor's] ... estate do not fall within the rubric of 'professional persons' in § 327(a)."). But once that predicate has been established ... it must be determined whether an employee is to be given discretion or au-

tonomy in some part of the administration of the debtor's estate ...... [F]or example, approval must be sought for the employment of a person with a relatively small task but a large measure of discretion in performing it but not sought for a person who is to perform an important but nondiscretionary task, *id.* However, this test, resting on such notions as "related," "administration," "tangential" and "discretion," offers no great improvement in clarity and ease of application; and perhaps concentrates too much on what is "professional" in the abstract, to the neglect of § 327(a)'s emphasis on "carrying out the trustee's duties under this title.".

*In re First Security Mortgage Company, Inc.,* 117 B.R. 1001, 1006–1007, (Bankr. N.D.Okla.1990).

In focusing on what type of professional is included in the provisions of Section 327, I would direct the parties attention to our Third Circuit case of *In re Arkansas Company, Inc.* and the insightful summary of the legislative history behind Sections 327(a) and 1103(a).

It is significant that Congress chose to place the requirement of court approval for the employment of an attorney, accountant, or other professional by the creditors committee directly in the Bankruptcy Code in 1978. 11 U.S.C. § 1103(a). The legislative history makes clear that the 1978 Code was designed to eliminate the abuses and detrimental practices that had been found to prevail. Among such practices was the cronyism of the "bankruptcy ring" and attorney control of bankruptcy cases. In fact, the House Report noted that "[i]n practice ... the bankruptcy system operates more for the benefit of attorneys than for the benefit of creditors." H.R. No. 595, 95th Cong., 2d Sess. 92, reprinted in 1978 U.S.Code

Cong. & Ad. News 5787, 5963, 6053. As detailed in the House Report, the official committee of unsecured creditors whose function was (and still is) to negotiate with the debtor in possession in the formulation of a plan was elected by the unsecured creditors, much as the trustee was elected in a liquidation case. Although the members of the committee are not compensated, the counsel to the creditors committee is paid, and, as described by the Report, "it is a lucrative position." "Thus," the Report continued, "creditors' attorneys with proxies participate actively in the election of the members of the committee in order that they may be selected as counsel to the committee." Id. at 93, 1978 U.S.Code Cong. & Ad. News 6054. As in the case of the election of a trustee in liquidation proceedings, "those operating the system turn it to their own advantage." Id. at 92, 1978 U.S.Code Cong. & Ad. News 6053. The Report stated further: Frequently, an attorney that has represented a creditor in past cases will notify him of the bankruptcy of one of the creditor's current debtors. The attorney then obtains a proxy from the creditor to vote the creditor's interest in the case. An attorney may obtain numerous proxies in a particular case in this manner. When the trustee is to be elected, the attorney votes all of his proxies for a colleague. The colleague thus elected then hires the attorney to serve as counsel to the trustee in the case, assuring a fee for his services. The fee for counsel is usually substantially higher than the fee for the trustee, because it is not limited to a specified percentage under the Bankruptcy Act. In a subsequent case, the colleague and the attorney will switch places. Id. at 92, 1978 U.S.Code Cong. & Ad. News 6053–54. The Report stated that the participation of creditors' attorneys who seek to be se-

lected as counsel to the committee parallels counsel's participation in a trustee election, as described above. Id. at 93, 1978 U.S.Code Cong. & Ad. News 6054. The House Report did not expressly connect the new statutory requirement of prior approval of attorneys for the creditors committee with the practices criticized in that Report, but the connection is evident. Prior approval and court appointment of the creditors committee, see 11 U.S.C. § 1102(a), are just some of the procedural safeguards imposed by Congress during its overhaul of bankruptcy procedure. If retroactive approval were freely granted, it would subvert the prophylactic purpose underlying the statutory requirement of prior approval.

*In re Arkansas Company, Inc.*, 798 F.2d 645, 649 (3d Cir.1986).

■ What may be the message of *Arkansas?* Methinks it was a call to be ever vigilant against the cancer of "the deals" that saddled Bankruptcy Act cases. If there is a pivotal point upon which turns whether one professional must obtain prior court approval, and another need not, it seems to be whether that position is the source of skulduggery and corruption, in light of current conditions. That is a subjective standard unfortunately burdening a reviewing court. Frankly, it appears no more subjective than the tests summarized in *First Security Mortgage.*

The Circuit focused on the Code being a remedy for the "cronyism" rampant under the Act. The Merriam–Webster dictionary defines cronyism as "partiality to cronies especially as evidenced in the appointment of political hangers-on to office without regard to their qualifications". A crony is defined as "a close friend especially of longstanding." Of course, partiality based on anything but qualifications should be discouraged and condemned. Unfortu-

nately, despite the best efforts of the professionals referenced—lawyers, accountants, realtors, financial managers—in short, those linked with the legal and financial administration of the bankruptcy have been severely scrutinized by reason of their pivotal impact on the course of the case and a perceived history of abuse. This has not been true as to production managers, technical assistants, sales managers, personnel executives, etc. These individuals play instrumental roles in the nonfinancial and nonlegal operations of the business. While necessarily burdened by a great deal of discretion in differentiating between these diverse occupations, I am satisfied that one who supervises nurses and makes recommendations to management with a goal to meet the compliance standards of the State is not so involved in the course of the bankruptcy as is to be grouped as either a crony or one of political influence. Moreover, there is little likelihood that this position could be leveraged into questionable commitments for future work based on factors other than qualifications. In addition, and without minimizing the contribution of these professionals, these positions appear to have no direct and immediate impact on the financial or legal future of the Debtor.

In short, I decline the request of the United States Trustee to order disgorgement of the fees paid to the respondents. I would no sooner require prior court approval of these professionals than I would the floor nurses, the supervising physicians, or the food manager. While the lines I draw may be blurry, I am influenced mostly by the dangers sought to be prevented in enacting Section 327.

An Order will follow.

### ORDER

For those reasons indicated in the Opinion filed this date, **IT IS HEREBY**

**ORDERED** that the United States Trustee's Motion for Review of Professional Fees and Request for Disgorgement of Unapproved Payments is denied.